BARKER *v.* KRAFT.

1. PARTNERSHIP—QUESTION FOR JURY.

Whether partnership existed between plaintiff and defendant was properly submitted to jury, where evidence was contradictory.

2. SAME—ACTION AT LAW.

In action for money alleged to have been collected by defendant for plaintiff and not accounted for, where defense was that partnership existed between parties for part of time covered by transactions, and that matters in dispute are not triable in action at law, verdict of no cause for action, *held*, justified, on record, even if partnership was terminated and defendant thereafter worked on commission.

3. SAME—UNIFORM PARTNERSHIP ACT—TRIAL—INSTRUCTIONS.

On issue as to whether partnership existed, it was not error to refuse request to charge containing language of uniform partnership act (2 Comp. Laws 1929, § 9847), where many parts thereof were not applicable to facts disclosed by evidence.

4. SAME.

Instruction that whether partnership existed depended upon intention mutually entertained, to be established by facts and circumstances, *held*, not error, on record.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 13, 1932. (Docket No. 99, Calendar No. 36,312.) Decided June 6, 1932.

Case by Joseph W. Barker against Oscar Kraft for fraud in withholding funds collected for plaintiff. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Howard W. Cavanagh* and *Walter P. North,* for plaintiff.

On existence of partnership as question of fact, see annotation in 18 L. R. A. (N. S.) 1076, 1077.

*Mustard, Mustard & Waterman,* for defendant.

Sharpe, J.  In the year 1928 the plaintiff was engaged in the retail coal business in the city of Battle Creek.  The defendant had been employed for a number of years in delivering coal for another dealer in that city on the basis of 50 cents a ton commission for selling and one dollar a ton for delivering.  In the spring of that year, defendant delivered some coal for plaintiff at the price above stated.  From July 14th until November 20th he devoted most of his time to that work, as plaintiff claims under the same arrangement for commission and delivery as he had had with others, but neglected to turn over to him all of the collections made therefor, and this action is brought for the recovery of the balance claimed to be due, $1,728.68.

In his notice of special defense the defendant made claim that—

"At the time of the alleged occurrence of the alleged facts set forth in plaintiff's declaration, said plaintiff and this defendant were partners"—

and that no accounting had been had between them, and that said partnership had never been dissolved, and that the matter in dispute was "not properly triable on the law side of the court."

The jury found in favor of the defendant, and answered a special question submitted to them: "Were plaintiff and defendant partners between July 14th and November 20, 1928?" in the affirmative.  Plaintiff has appealed from the judgment entered on the verdict.

1.  It is insisted that there was no competent evidence to justify the answer of the jury to the special question.  The defendant, called for cross-examination by plaintiff's counsel, testified:

"The word 'partnership' was mentioned to me by Mr. Barker at his garage just about the first of July. No one was present at the time and Mr. Barker mentioned the word 'partnership.' He wanted to know if I—about how many customers I had. He wanted to know the reason why we couldn't make good if we went into partnership, and we did go into partnership. I said, 'Why, that suits me.' I put the trucks and tools and the men into the business. I had three trucks and plenty of tools, five or six of them, and three or four forks and a car mover that I had used in my business previously. I put my trucks against Mr. Barker's money. My interest in the coal that was in the yard consisted of my trucks and the tools. I didn't buy any of the coal nor pay for any of it. I didn't own any of the office building or the buildings in the yard or the sheds. * * * The partnership was a 50–50 one. I was to have half of all that was made out of the partnership and Mr. Barker was to buy all of the coal and furnish all of the money and I was to furnish three trucks. We were each to pay half of the expenses."

When examined by his own counsel, he testified:

"The agreement was that I was to furnish all the help and receive part of the com—of the profits and stand half of the expenses. From the first of July until November 20th I didn't operate on a salary and I didn't haul coal on a truck. What I did was to sell coal and collect and look after the business on the outside."

In answer to a question as to the number of customers he secured that plaintiff did not then have, he replied, "About 200, I believe. I never counted them. It is somewhere around there."

Howard Sowers testified that defendant hired him to assist in loading the coal on the trucks, and that he was paid 50 cents per hour for his work.

"After a while Mr. Barker cut the wages. I told Mr. Barker that I was working for Mr. Kraft, that he was the one who hired me, and Mr. Barker said, well, he was going to cut the wages. He said they were in partnership with Mr. Kraft."

Ada Case testified that in a conversation had with plaintiff over the telephone—

"He said he took Mr. Kraft in as a partner because he said that he had the truck and that he could take care of the other part."

The plaintiff denied that any partnership agreement was made, or even talked about, between them. He produced several witnesses who testified that defendant, during the time he claimed the partnership existed, told them he was hauling coal by the ton for the plaintiff. Under the proofs submitted, we think it was clearly the duty of the court to submit the question of partnership to the jury.

2. Defendant admitted that the partnership relation was terminated on November 20, 1928. He delivered coal thereafter for plaintiff on the commission and delivery rate per ton basis, before referred to. It is insisted on behalf of plaintiff that, even if the partnership relation existed until November 20th, the verdict of "no cause for action" cannot be sustained in view of this after employment. It appears, however, that defendant's earnings after November 20th amounted to $2,130.82, that plaintiff paid out for him the sum of $1,320.33, and that defendant collected and retained $300.35. If, therefore, the statement of their account for this period alone be considered, plaintiff was overpaid to the amount of over $500. It seems clear that if a partnership existed, as claimed by defendant, plaintiff was not entitled to a judgment on account of their dealings after its termination.

3. Error is assigned upon that part of the court's instruction to the jury reading as follows:

"I charge you that a partnership cannot be implied as a matter of law from a business relation if the parties thereto have not made or intended to make a partnership contract. Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of partnership are to be found, which at the very least should consist of the following: Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers, however, by agreement between the parties themselves may be restricted at option to the extent even of making one the sole agent of the others and of the business.  *  *  *

"I charge you further that as between the plaintiff and the defendant, the question of whether there was a partnership depends upon intention mutually entertained, to be established by facts and circumstances. Participation in profits as between the parties does not establish a partnership, but is only *prima facie* evidence of a partnership and such inference may not be drawn if the profits are received as wages."

Counsel preferred a request containing the language of 2 Comp. Laws 1929, § 9847 (the uniform partnership act). Many parts of this section were not applicable to the facts disclosed by the evidence. Particular stress is laid upon the use of the words "facts and circumstances," as used in the above quotation. In our opinion, the manner in which the business was afterwards conducted, the fact that de-

fendant was not called upon to account for the money received by him, and the payment by plaintiff to the men employed in handling the coal, were all "facts and circumstances" which might be considered by the jury in determining the question submitted to them. A reading of the charge in its entirety satisfies us that the jury were properly instructed on the essential facts which they must find to establish the partnership relation between the parties.

The judgment is affirmed.

CLARK, C. J., and McDONALD, POTTER, FEAD, WIEST, and BUTZEL, JJ., concurred. NORTH, J., did not sit.