## COMMISSIONER OF INTERNAL REVENUE v. CULBERTSON ET UX.

No. 313.   Argued February 7, 1949.—Decided June 27, 1949.

*Arnold Raum* argued the cause for petitioner.  With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Ellis N. Slack* and *Harry Baum.*

*Benjamin L. Bird* argued the cause and filed a brief for respondents.

*William A. Sutherland* and *Arthur H. Kent* filed a brief, as *amici curiae*, supporting respondents.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

This case requires our further consideration of the family partnership problem. The Commissioner of Internal Revenue ruled that the entire income from a partnership allegedly entered into by respondent and his four sons must be taxed to respondent,[1] and the Tax Court sustained that determination. The Court of Appeals for the Fifth Circuit reversed. 168 F. 2d 979. We granted certiorari, 335 U. S. 883, to consider the Commissioner's claim that the principles of *Commissioner* v. *Tower*, 327 U. S. 280 (1946), and *Lusthaus* v. *Commissioner*, 327 U. S. 293 (1946), have been departed from in this and other courts of appeals decisions.

Respondent taxpayer is a rancher. From 1915 until October 1939, he had operated a cattle business in partnership with R. S. Coon. Coon, who had numerous business interests in the Southwest and had largely financed the partnership, was 79 years old in 1939 and desired to dissolve the partnership because of ill health. To that end, the bulk of the partnership herd was sold until, in October of that year, only about 1,500 head remained. These cattle were all registered Herefords, the brood or foundation herd. Culberton wished to keep these cattle and approached Coon with an offer of $65 a head. Coon agreed to sell at that price, but only upon

---

[1] Gladys Culbertson, the wife of W. O. Culbertson, Sr., is joined as a party because of her community of interest in the property and income of her husband under Texas law.

condition that Culbertson would sell an undivided one-half interest in the herd to his four sons at the same price. His reasons for imposing this condition were his intense interest in maintaining the Hereford strain which he and Culbertson had developed, his conviction that Culbertson was too old to carry on the work alone, and his personal interest in the Culbertson boys. Culbertson's sons were enthusiastic about the proposition, so respondent thereupon bought the remaining cattle from the Coon and Culbertson partnership for $99,440. Two days later Culbertson sold an undivided one-half interest to the four boys, and the following day they gave their father a note for $49,720 at 4 per cent interest due one year from date. Several months later a new note for $57,674 was executed by the boys to replace the earlier note. The increase in amount covered the purchase by Culbertson and his sons of other properties formerly owned by Coon and Culbertson. This note was paid by the boys in the following manner:

Credit for overcharge.................. $5,930
Gifts from respondent................. 21,744
One-half of a loan procured by Culbertson & Sons partnership.......... .. :.. 30,000

The loan was repaid from the proceeds from operation of the ranch.

The partnership agreement between taxpayer and his sons was oral. The local paper announced the dissolution of the Coon and Culbertson partnership and the continuation of the business by respondent and his boys under the name of Culbertson & Sons. A bank account was opened in this name, upon which taxpayer, his four sons and a bookkeeper could check. At the time of formation of the new partnership, Culbertson's oldest son was 24 years old, married, and living on the ranch, of which he had for two years been foreman under the

Coon and Culbertson partnership. He was a college graduate and received $100 a month plus board and lodging for himself and his wife both before and after formation of Culbertson & Sons and until entering the Army. The second son was 22 years old, was married and finished college in 1940, the first year during which the new partnership operated. He went directly into the Army following graduation and rendered no services to the partnership. The two younger sons, who were 18 and 16 years old respectively in 1940, went to school during the winter and worked on the ranch during the summer.[2]

The tax years here involved are 1940 and 1941. A partnership return was filed for both years indicating a division of income approximating the capital attributed to each partner. It is the disallowance of this division of the income from the ranch that brings this case into the courts.

*First.* The Tax Court read our decisions in *Commissioner* v. *Tower, supra,* and *Lusthaus* v. *Commissioner, supra,* as setting out two essential tests of partnership for income-tax purposes: that each partner contribute to the partnership either vital services or capital originating with him. Its decision was based upon a finding that none of respondent's sons had satisfied those requirements during the tax years in question. Sanction for the use of these "tests" of partnership is sought in this paragraph from our opinion in the *Tower* case:

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially

---

[2] A daughter was also made a member of the partnership some time after its formation upon the gift by respondent of one-quarter of his one-half interest in the partnership. Respondent did not contend before the Tax Court that she was a partner for tax purposes.

contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." 327 U. S. at 290.

It is the Commissioner's contention that the Tax Court's decision can and should be reinstated upon the mere reaffirmation of the quoted paragraph.

The Court of Appeals, on the other hand, was of the opinion that a family partnership entered into without thought of tax avoidance should be given recognition tax-wise whether or not it was intended that some of the partners contribute either capital or services during the tax year and whether or not they actually made such contributions, since it was formed "with the full expectation and purpose that the boys would, in the future, contribute their time and services to the partnership." [3] We must consider, therefore, whether an intention to contribute capital or services sometime in the future is

---

[3] 168 F. 2d 979 at 982. The court further said: "Neither statute, common sense, nor impelling precedent requires the holding that a partner must contribute capital or render services to the partnership prior to the time that he is taken into it. These tests are equally effective whether the capital and the services are presently contributed and rendered or are later to be contributed or to be rendered." Id. at 983. See Note, 47 Mich. L. Rev. 595.

sufficient to satisfy ordinary concepts of partnership, as required by the *Tower* case. The sections of the Internal Revenue Code involved are §§ 181 and 182,[4] which set out the method of taxing partnership income, and §§ 11 and 22 (a),[5] which relate to the taxation of individual incomes.

In the *Tower* case we held that, despite the claimed partnership, the evidence fully justified the Tax Court's holding that the husband, through his ownership of the capital and his management of the business, actually created the right to receive and enjoy the benefit of the income and was thus taxable upon that entire income under §§ 11 and 22 (a). In such case, other members of the partnership cannot be considered "Individuals carrying on business in partnership" and thus "liable for income tax . . . in their individual capacity" within the meaning of § 181. If it is conceded that some of the partners contributed neither capital nor services to the partnership during the tax years in question, as the Court of Appeals was apparently willing to do in the present case, it can hardly be contended that they are in any way responsible for the production of income during those years.[6] The partnership sections of the Code are, of course, geared to the sections relating to taxation of individual income, since no tax is imposed upon partnership income as such. To hold that "Individuals carrying on business in partnership" includes persons who contribute nothing during the tax period would violate the first principle of income taxation: that income must

---

[4] 26 U. S. C. §§ 181, 182.

[5] 26 U. S. C. §§ 11, 22 (a).

[6] Of course one who has been a bona fide partner does not lose that status when he is called into military or government service, and the Commissioner has not so contended. On the other hand, one hardly becomes a partner in the conventional sense merely because he might have done so had he not been called.

be taxed to him who earns it. *Lucas* v. *Earl,* 281 U. S. 111 (1930); *Helvering* v. *Clifford,* 309 U. S. 331 (1940); *National Carbide Corp.* v. *Commissioner,* 336 U. S. 422 (1949).

Furthermore, our decision in *Commissioner* v. *Tower, supra,* clearly indicates the importance of participation in the business by the partners during the tax year. We there said that a partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." *Id.* at 286. This is, after all, but the application of an often iterated definition of income—the gain derived from capital, from labor, or from both combined [7]—to a particular form of business organization. A partnership is, in other words, an organization for the production of income to which each partner contributes one or both of the ingredients of income—capital or services. *Ward* v. *Thompson,* 22 How. 330, 334 (1859). The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22 (a) of the Code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income.[8]

---

[7] *Eisner* v. *Macomber,* 252 U. S. 189, 207 (1920); *Merchants Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, 519 (1921). See Treas. Reg. 101, Art. 22 (a)–1. See 1 Mertens, *Law of Federal Income Taxation,* 159 *et seq.*

[8] The *reductio ad absurdum* of the theory that children may be partners with their parents before they are capable of being entrusted with the disposition of partnership funds or of contributing substantial services occurred in *Tinkoff* v. *Commissioner,* 120 F. 2d 564, where a taxpayer made his son a partner in his accounting firm the day the son was born.

*Second.* We turn next to a consideration of the Tax Court's approach to the family partnership problem. It treated as essential to membership in a family partnership for tax purposes the contribution of either "vital services" or "original capital." [9] Use of these "tests" of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, "whether the partnership is real within the meaning of the federal revenue laws" and makes decisive what we described as "circumstances [to be taken] into consideration" in making that determination. [10]

The *Tower* case thus provides no support for such an approach. We there said that the question whether the family partnership is real for income-tax purposes depends upon

> "whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by

---

[9] While the Tax Court went on to consider other factors, it is clear from its opinion that a contribution of either "vital services" or "original capital" was considered essential to membership in the partnership. After finding that none of respondent's sons had, in the court's opinion, contributed either, the court continued: "In addition to the above inquiry as to the presence of those elements deemed by the *Tower* case essential to partnerships recognizable for Federal tax purposes, . . . ." 6 CCH TCM 692, 699. Again, the court commented:

"Though the petitioner urges that many cattle businesses are composed of fathers and sons, and that the nature of the industry so requires, we think the same is probably equally true of other industries where men wish to take children into business with them. Nevertheless, we think that fact does not override the many decisions to the general effect that partners must contribute capital originating with them, or vital services." *Id.* at 700.

[10] See Mannheimer and Mook, *A Taxwise Evaluation of Family Partnerships,* 32 Iowa L. Rev. 436, 447-48.

their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' *Drennen* v. *London Assurance Co.*, 113 U. S. 51, 56; *Cox* v. *Hickman*, 8 H. L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes." 327 U. S. at 287.

The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the *Tower* case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.[11]

---

[11] This is not, as we understand it, contrary to the approach taken by the Bureau of Internal Revenue in its most recent statement of policy. I. T. 3845, 1947 Cum. Bull. 66, states at p. 67:

"Where persons who are closely related by blood or marriage enter into an agreement purporting to create a so-called family partnership or other arrangement with respect to the operation of a business or income-producing venture, under which agreement all of the parties are accorded substantially the same treatment and consideration with respect to their designated interests and prescribed responsibilities in the business as if they were strangers dealing at arm's length; where the actions of the parties as legally responsible persons evidence an intent to carry on a business in a partnership relation; and where the terms of such agreement are substantially followed in the operation of the business or venture, as well as in the dealings of the partners or members with each other, it is the policy of the Bureau to disregard the close family relationship existing between the parties and to recognize, for Federal income tax purposes, the division of profits as prescribed by such agreement. However, where the instrument purporting to create the family partnership expressly provides

There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted.[12]  The Tax Court, for example, must make such a determination in every estate tax case in which it is contended that a transfer was made in contemplation of death, for "The question, necessarily, is as to the state of mind of the donor." *United States* v. *Wells,* 283 U. S. 102, 117 (1931). See *Allen* v. *Trust Co.· of Georgia,* 326 U. S. 630 (1946). Whether the parties really intended to carry on business as partners is not, we think, any more difficult of determination or the manifestations of such intent any less perceptible than is ordinarily true of inquiries into the subjective.

But the Tax Court did not view the question as one concerning the bona fide intent of the parties to join together as partners. Not once in its opinion is there even an oblique reference to any lack of intent on the part of respondent and his sons to combine their capital and services "for the purpose of carrying on the business." Instead, the court, focusing entirely upon concepts of "vital services" and "original capital," simply decided that

---

that the wife or child or other member of the family shall not be required to participate in the management of the business, or is merely silent on that point, the extent and nature of the services of such individual in the actual conduct of the business will be given appropriate evidentiary weight as to the question of intent to carry on the business as partners."

[12] Nearly three-quarters of a century ago, Bowen, L. J., made the classic statement that "the state of a man's mind is as much a fact as the state of his digestion." *Edgington* v. *Fitzmaurice,* 29 L. R. Ch. Div. 459, 483. State of mind has always been determinative of the question whether a partnership has been formed as between the parties. See, e. g., *Drennen* v. *London Assurance Co.,* 113 U. S. 51, 56 (1885); *Meehan* v. *Valentine,* 145 U. S. 611, 621 (1892); *Barker* v. *Kraft,* 259 Mich. 70, 242 N. W. 841 (1932); *Zuback* v. *Bakmaz,* 346 Pa. 279, 29 A. 2d 473 (1943); *Kennedy* v. *Mullins,* 155 Va. 166, 154 S. E. 568 (1930).

the alleged partners had not satisfied those tests when the facts were compared with those in the *Tower* case. The court's opinion is replete with such statements as "we discern nothing constituting what we think is a requisite contribution to a real partnership," "we find no son adding 'vital additional service' which would take the place of capital contributed because of formation of a partnership," and "the sons made no capital contribution, within the sense of the *Tower* case." [13]   6 CCH TCM 698, 699.

Unquestionably a court's determination that the services contributed by a partner are not "vital" and that he has not participated in "management and control of the business" [14] or contributed "original capital" has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners. But such a determination is not conclusive, and that is the vice in the "tests" adopted by the Tax Court. It assumes that there is no room for an honest difference of opinion as to whether the services or capital furnished by the alleged partner are of sufficient importance to justify his inclusion in the partnership. If, upon a consideration of all the facts, it is found that the partners joined

---

[13] In the *Tower* case the taxpayer argued that he had a right to reduce his taxes by any legal means, to which this Court agreed. We said, however, that existence of a tax avoidance motive gives some indication that there was no bona fide intent to carry on business as a partnership. If *Tower* had set up objective requirements of membership in a family partnership, such as "vital services" and "original capital," the motives behind adoption of the partnership form would have been irrelevant.

[14] Although "management and control of the business" was one of the circumstances emphasized by the *Tower* case, along with "vital services" and "original capital," the Tax Court did not consider it an alternative "test" of partnership. See discussion, *infra*, at part *Third*, and note 17.

together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. The *Tower* case did not purport to authorize the Tax Court to substitute its judgment for that of the parties; it simply furnished some guides to the determination of their true intent. Even though it was admitted in the *Tower* case that the wife contributed no original capital, management of the business, or other vital services, this Court did not say as a matter of law that there was no valid partnership. We said, instead, that "There was, thus, more than ample evidence to support the Tax Court's finding that no genuine union for partnership business purposes *was ever intended* and that the husband earned the income." 327 U. S. at 292. (Italics added.)

*Third.* The Tax Court's isolation of "original capital" as an essential of membership in a family partnership also indicates an erroneous reading of the *Tower* opinion. We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in *Helvering* v. *Clifford, supra.* The facts may indicate, on the contrary, that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes. In the *Tower* and *Lusthaus* cases this Court, applying the principles of *Lucas* v. *Earl, supra; Helvering* v. *Clifford, supra;* and *Helvering* v. *Horst,* 311 U. S. 112, found that the purported gift, whether or not technically complete, had made no substantial change in the economic relation of members of the family to the income. In each case the husband continued to manage and control the busi-

ness as before, and income from the property given to the wife and invested by her in the partnership continued to be used in the business or expended for family purposes. We characterized the results of the transactions entered into between husband and wife as "a mere paper reallocation of income among the family members," noting that "The actualities of their relation to the income did not change." 327 U. S. at 292. This, we thought, provided ample grounds for the finding that no true partnership was intended; that the husband was still the true earner of the income

But application of the *Clifford-Horst* principle does not follow automatically upon a gift to a member of one's family, followed by its investment in the family partnership. If it did, it would be necessary to define "family" and to set precise limits of membership therein. We have not done so for the obvious reason that existence of the family relationship does not create a status which itself determines tax questions,[15] but is simply a warning that things may not be what they seem. It is frequently stated that transactions between members of a family will be carefully scrutinized. But, more particularly, the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used. He is able, in other words, to retain "the substance of full enjoyment of all the rights which previously he had in the property." *Helvering* v. *Clifford, supra,* at 336.[16]

---

[15] Except, of course, when Congress defines "family" and attaches tax consequences thereto. See, *e. g.* 26 U. S. C. § 503 (a) (2).

[16] It is not enough to say in this case, as we did in the *Clifford* case, that "It is hard to imagine that respondent felt himself the poorer after this [partnership agreement] had been executed or,

The fact that transfers to members of the family group may be mere camouflage does not, however, mean that they invariably are. The *Tower* case recognized that one's participation in control and management of the business is a circumstance indicating an intent to be a bona fide partner despite the fact that the capital contributed originated elsewhere in the family.[17] If the donee of property who then invests it in the family partnership exercises dominion and control over that property—and through that control influences the conduct of the partnership and the disposition of its income—he may well be a true partner. Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise. In the *Tower* and *Lusthaus* cases we distinguished between active participation in the affairs of the business by a donee of a share in the partnership on the one hand,

---

if he did, that it had any rational foundation in fact." 309 U. S. at 336. Culbertson's interest in his partnership with Coon was worth about $50,000 immediately prior to dissolution of the partnership. In order to sustain the Tax Court, we would have to conclude that he felt himself worth approximately twice that much upon his purchase of Coon's interest, even though he had agreed to sell that interest to his sons at the same price.

[17] As noted above (note 13), participation in control and management of the business, although given equal prominence with contributions of "vital services" and "original capital" as circumstances indicating an intent to enter into a partnership relation, was discarded by the Tax Court as a "test" of partnership. This indicates a basic and erroneous assumption that one can never make a gift to a member of one's family without retaining the essentials of ownership, if the gift is then invested in a family partnership. We included participation in management and control of the business as a circumstance indicative of intent to carry on business as a partner to cover the situation in which active dominion and control of the subject of the gift had actually passed to the donee. It is a circumstance of prime importance.

and his passive acquiescence to the will of the donor on the other.[18] This distinction is of obvious importance to a determination of the true intent of the parties. It is meaningless if "original capital" is an essential test of membership in a family partnership.

The cause must therefore be remanded to the Tax Court for a decision as to which, if any, of respondent's sons were partners with him in the operation of the ranch during 1940 and 1941. As to which of them, in other words, was there a bona fide intent that they be partners in the conduct of the cattle business, either because of services to be performed during those years, or because of contributions of capital of which they were the true owners, as we have defined that term in the *Clifford, Horst,* and *Tower* cases? No question as to the allocation of income between capital and services is presented in this case, and we intimate no opinion on that subject.

The decision of the Court of Appeals is reversed with directions to remand the cause to the Tax Court for further proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE RUTLEDGE think that the Tax Court properly applied the principles of the *Tower* and *Lusthaus* decisions (327 U. S. 280, *id.,* 293) in this case. However, they consider it of paramount importance in this case to have a court interpretation of the applicable taxing statute, for guidance in its application. Accordingly, they acquiesce in the Court's opinion and judgment.

---

[18] There is testimony in the record as to the participation by respondent's sons in the management of the ranch. Since such evidence did not fall within either of the "tests" adopted by the Tax Court, it failed to consider this testimony. Without intimating any opinion as to its probative value, we think that it is clearly relevant evidence of the intent to carry on business as partners.

MR. JUSTICE BURTON, concurring, states that, upon remand of the cause to the Tax Court, there is nothing in the facts which have been presented here which, as a matter of law, will preclude that court from finding that the 1940 and 1941 income was properly taxable on a partnership basis. The physical absence of some of the Culbertson boys from the ranch does not necessarily preclude them or others from the obligations or the benefits of the partnership for tax purposes. Their contributions of capital, their participation in the income and their commitments to return to the ranch or otherwise to render service to the partnership are among the material factors to be considered. A present commitment to render future services to a partnership is in itself a material consideration to be weighed with all other material considerations for the purposes of taxation as well as for other partnership purposes.

MR. JUSTICE JACKSON would affirm on the opinion of the court below, being of the view that the ordinary common-law tests of validity of partnerships are the tests for tax purposes and that they were met in this case.

MR. JUSTICE FRANKFURTER, concurring.

The Court finds that the Tax Court applied wrong legal standards in determining that the arrangement in controversy did not constitute a partnership. It remands the case to the Tax Court because it is for that court, and not for the Court of Appeals, to ascertain, on the basis of appropriate legal criteria, the existence of a partnership within the provisions of Int. Rev. Code §§ 181 and 182. With these conclusions I agree. I think, however, that it is due to the Tax Court, the Courts of Appeals, the Treasury and the bar to make more explicit what the appropriate legal criteria are.

The Tax Court's decision rested on a misconception of our decision in *Commissioner v. Tower*, 327 U. S. 280.

It is, however, fair to say that it was led into that misconception by phrases which it culled from the *Tower* opinion with inadequate attention to the opinion in its entirety—both what it said and what it significantly did not say. The *Tower* opinion did not say what the Government now urges upon this Court; the Court's opinion did not take the position of the concurring opinion. In short, the opinion did not say that family partnerships are not to be regarded as partnerships for income-tax purposes even though they be genuine commercial partnerships; the opinion did not even announce hobbling presumptions under the income-tax law against such partnerships.

On the contrary, in defining the relevant considerations for determining the existence of a partnership, the Court in the *Tower* case relied on familiar decisions formulating the concept of partnership for purposes of various commercial situations in which the nature of that concept was decisive. It is significant that among the cases cited was the leading case of *Cox* v. *Hickman*, 8 H. L. Cas. 268. The Court today reaffirms this reliance by its quotation from the *Tower* case. The final sentence of the portion quoted underlines the fact that the Court did not purport to announce a special concept of "partnership" for tax purposes differing from the concept that rules in ordinary commercial-law cases. The sentence is:

> "We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes." 327 U. S. at 287.

The taxability of income under §§ 181 and 182 is not a purely economic problem like the determination under § 22 (a) of what is income and to whom it is attributable. The word "income" has none but an economic significance, and so the application of § 22 (a) is properly a matter of economic analysis. Cf. *Lucas* v. *Earl*, 281 U. S.

111. But §§ 181 and 182 import a concept of a different sort. These sections make taxability turn on the existence of the relation of "partnership." The term carries its own meaning, just as does "negligence" in the Federal Employers' Liability Act, because such a common-law concept has a content familiar throughout the country to those to whom the law speaks. The basic criteria which determine its applicability have been so well and so long established that they were implicitly incorporated by the Internal Revenue Code's definition of "partnership." [1] Congress has thereby stamped a nationwide meaning upon the term which disregards minor local variants or an occasional legal sport. Only in the application to a given case of the criteria thus incorporated do economic data become relevant, and such data are inevitably subject to differing inferences by different triers of fact. It is in the appraisal of facts, therefore, that difficulty arises, and this difficulty is reflected by an appellate court in the degree of respect it accords to the particular tribunal whose appraisal of the facts is before it for review.

That, as I see it, is the crux of the problem that is presented by these family partnerships in their relation to

---

[1] The Code defines "partnership" in the following terms:

"§ 3797. Definitions.

"(2) Partnership and partner.

"The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization."

This definition carries two necessary implications: (1) recourse to the law of a particular State is precluded, see Treas. Reg. 111, §§ 29.3797–1, 29.3797–4; see also *Lyeth* v. *Hoey*, 305 U. S. 188, 193–94; (2) use of the words "The term 'partnership' includes" presupposes that the term has a recognized content. If this is not to be found in the law of a particular State, it can only be found in the general law of partnership.

the income tax. Men may put on the habiliments of a partnership whenever it advantages them to be treated as partners underneath, although in fact it may be a case of "The King has no clothes on" to the sharp eyes of the law. Since there are special temptations to appear as a partnership in order to avoid the hardships of heavy taxation, the tribunal which presumably is gifted with superior discernment in differentiating between the real thing and the imitation—the Tax Court—will naturally be on the alert against being taken in. Therefore, a finding by the Tax Court that that which has the outward appearance of an arrangement to engage in a common enterprise is not in fact such an associated business venture ought to be respected when challenged in another court, unless such a determination is wholly without warrant in fact or, as in this case, the wrong standards for judgment have been applied.

A fair reading of our *Tower* opinion in its entirety reflects the formulation of the concept of partnership which is set forth at the beginning of its analysis and which the Court now quotes. While recognizing the importance of the question "who actually owned a share of the capital attributed to the wife on the partnership books," the *Tower* opinion states the ultimate issue to be "whether this husband and wife really intended to carry on business as a partnership." 327 U. S. at 289. To that determination it was of course relevant that no new capital was brought into the business as a result of the formation of the partnership, that the wife drew on income of the partnership only to pay for the type of things she had previously bought for the family, and that the consequence was a mere paper reallocation of income. But these circumstances were not cited as giving the term "partnership" a content peculiar to the Internal Revenue Code. They were characterized, rather, simply as "more than ample evidence to support

the Tax Court's finding that no genuine union for partnership business purposes was ever intended" and, as a corollary, "that the husband earned the income." 327 U. S. at 292.

Recognition of the importance, in applying §§ 181 and 182, of the appraisal of facts makes manifest why, quite apart from the definition contained in § 3797, a determination by a State court should not, as the *Tower* opinion pointed out, foreclose a contrary determination by a federal tribunal charged with administration of the tax laws. Such an inconsistency would not mean that the legal standards applied by each were inconsistent; it would be a result simply of the commonplace that no finder of fact can see through the eyes of any other finder of fact. See *Texas* v. *Florida,* 306 U. S. 398, 411. Nor would inconsistency be created by a State court's concern for the protection of creditors which lead it to seize upon adoption of the outward form as the vital fact. So, indeed, might the taxing authorities refuse to be precluded from holding the taxpayer to his election to adopt the form of a partnership. Cf. *Higgins* v. *Smith,* 308 U. S. 473, 477. The need for guarding against misuse of the outward form of a partnership as a device for obtaining tax advantages is properly satisfied by reliance on the vigilance of the Tax Court, not by distorting the concept of partnership. It is not for this Court, by redefinition or the erection of presumptions, to amend the Internal Revenue Code so as virtually to ban partnerships composed of the members of an intimate family group.

The present case, nevertheless, is not the first manifestation of an impression that the *Tower* opinion had precisely such an effect.[2] It seems to me important, therefore,

---

[2] See, e. g., *Fletcher* v. *Commissioner,* 164 F. 2d 182 (C. A. 2d Cir.); *Hougland* v. *Commissioner,* 166 F. 2d 815 (C. A. 6th Cir.). In this connection see also Tuttle and Wilson, *The Confusion on Family Partnerships,* 9 Ga. B. J. 353 (1947).

to make crystal clear that there is no special concept of "partnership" for tax purposes, while at the same time recognizing that in view of the temptations to assume a virtue that they have not for the sake of tax savings, men and women may appear in a guise which the gimlet eye of the Tax Court is entitled to pierce. We should leave no doubt in the minds of the Tax Court, of the Courts of Appeals, of the Treasury and of the bar that the essential holding of the *Tower* case is that there is "no reason" why the "general rule" by which the existence of a partnership is determined "should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes."

In plain English, if an arrangement among men is not an arrangement which puts them all in the same business boat, then they cannot get into the same boat merely to seek the benefits of §§ 181 and 182. But if they are in the same business boat, although they may have varying rewards and varied responsibilities, they do not cease to be in it when the tax collector appears.