Leona Lewis et al. [1] v. Commissioner. Lewis v. Commissioner
Docket Nos. 36336-36338.
United States Tax Court
1953 Tax Ct. Memo LEXIS 6; 12 T.C.M. (CCH) 1465; T.C.M. (RIA) 54017; December 31, 1953
*6 Warren F. Wattles, Esq., 1200 Greenleaf Building, Jacksonville, Fla., and Ralph H. Martin, Esq., for the petitioners. Thomas C. Cravens, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and penalties as follows: Year
Deficiency
50% Penalty
Leona Lewis
1943
$ 2,449.76
$ 852.71
1944
994.62
497.31
1945
1,874.29
937.15
Gordon L. Lewis
1943
12,675.65
5,965.66
1944
14,628.05
7,314.03
1945
18,093.89
9,046.95
William B. Lewis
1944
933.02
466.51
1945
1,776.61
888.31
The contested issues are (1) whether in the taxable year 1943 the business conducted under the name of G. L. Lewis Crabmeat Plant was a bona fide partnership consisting of Gordon L. Lewis and his wife, Leona Lewis; (2) whether in the taxable years 1944 and 1945 the business conducted under the name of G. L. Lewis Crabmeat Plant was a bona fide partnership consisting of Gordon L. Lewis, Leona Lewis, and their son, William B. Lewis; and (3) whether the petitioners filed false and fraudulent income tax returns in any of the taxable years involved. All other *7 issues raised by the pleadings are conceded by the petitioners. Findings of Fact During the taxable years in question the petitioners resided in Jacksonville, Florida. Their returns for the respective periods involved were filed with the collector of internal revenue for the district of Florida, at Jacksonville. In December 1936 Gordon L. Lewis, hereinafter referred to as petitioner, and his family moved to Palmetto, Florida. A small building on the water front was rented and a crab meat packing business was launched. Some secondhand equipment was acquired at a cost of approximately $300. A woman was employed to teach the petitioner's wife how to pick the meat from the carcass, which yields three grades of meat. The proper packing of crab meat requires special training. At the outset about 15 women pickers were employed. In later years the force was increased to 25 or 30 women. The petitioner, his wife, and two eldest sons were all employed in the operation of the business. The supply of crabs at Palmetto was insufficient and, in August 1937, the Lewis family moved to Jacksonville, Florida, where a larger plant was acquired and the business reestablished. The principal job *8 of the petitioner was to locate fishermen and promote the supply of crabs. He also assisted in the plant by firing the boiler and cooking and washing crabs. He also attended to the merchandising and financing and kept the records of the business. The petitioner's wife had charge of the women employees. Her main job was to teach the women to pick crab meat and to generally supervise their work. She hired pickers and kept a record of advances or loans to the women between paydays. Until about the middle of June 1944 the petitioner and his wife went to work at seven in the morning and both put in full time. In 1944 the health of Leona Lewis was impaired for a time and she was able to work in the plant only two or three days a week during this period. From the inception of the business it was orally understood between the petitioner and his wife that they were equal owners of the business. They together made the decisions pertaining to the operation of the business. Leona Lewis was never paid any salary. On September 14, 1937, an account was opened at the Springfield Atlantic Bank in Jacksonville, Florida, in the name of the petitioner. The income from the crab meat business was deposited *9 in that account. On December 27, 1941, the account was changed to a joint account in the names of petitioner and his wife. No partnership returns were filed prior to 1944. The two sons, Victor and William B., were employed at the crab meat plant from the start of the business and were paid a small salary. In 1942 Victor was inducted into the armed services. William's job was weighing crabs, cooking and backing crabs, putting tops on the cans and icing the barrels in which the cans of packed crab meat were shipped. He also went out on trucks and hauled crab meat. William had some previous experience in crab meat packing and he urged his parents to move to Florida and engage in such a business. Sometime in December 1943 the petitioner and his wife consulted with an attorney about crab meat business, and particularly in connection with taking their son William into the business as a partner. They were advised to have a written partnership agreement. Such an instrument was prepared and executed by the petitioner, his wife, and William. This agreement dated January 1, 1944, provided that the three signers were to operate the crab meat plant as equal partners under the name and style *10 of G. L. Lewis Crabmeat Plant. The profits and losses were to be shared equally. It also provided that each partner was to receive $50 per week which was to be charged against his or her share of the profits. The agreement provided that in the event of the death of William B. Lewis the remaining partners, or partner, were to have the right to buy his interest for the sum of $1,000. William paid nothing for his interest. No gift tax return was filed. The equipment owned by the G. L. Lewis Crabmeat Plant as of December 31, 1943, had a value of approximately $2,700. Labor and not capital was the principal income-producing factor of the business. Under date of January 20, 1944, a new account was opened in the Springfield Atlantic Bank of Jacksonville, in the name of G. L. Lewis Crabmeat Plant, with an initial deposit of $2,000. The signature card describes the business as a partnership, and the petitioner, his wife, and son all signed the card as partners. The name G. L. Lewis Crabmeat Plant was registered as a trade name and the affidavit filed with the registration lists the names of Gordon L. Lewis, Leona Lewis, and W. B. Lewis as partners and states the interest of each to be one-third. *11 The notice of intended registration was published in the Financial News of Jacksonville, Florida, on April 25, May 2, 9, 16, and 23, 1944. In July 1944 William went into the armed services. Upon his discharge in September 1945 he resumed his duties in the crab meat packing plant. Subsequent to the execution of the partnership agreement of January 1, 1944, the $50 per week drawing account was paid to William while he was in Jacksonville, or to his wife while he was overseas. Neither the petitioner nor his wife regularly withdrew their $50 a week but left their shares of the profits in the business, except for amounts withdrawn to pay their income taxes or expenses. About February 15, 1946, William and his younger brother Euclid, together with an uncle, formed a partnership to conduct a crab meat business at Brunswick, Georgia. When William moved to Brunswick, Georgia, on February 15, 1946, his participation in the partnership of the Jacksonville business ceased. Up to February 15, 1946, William had withdrawals against his partnership interest of approximately $22,000. A final accounting has been delayed to await the final determination of the tax litigation. On January 4, 1947, the *12 petitioner, his wife, and William executed a new instrument as of February 16, 1946, in which it is recited that William had terminated his relationship with the Jacksonville partnership to enter business in Brunswick, Georgia. The instrument further states that Gordon L. Lewis and Leona Lewis agree that each recognizes the other as a full partner in the Jacksonville business and each has a right to a one-half interest therein. At the time of the consultation with their attorney in December 1943, he advised them that since the petitioner and his wife were then the owners of the Jacksonville business they were entitled to file separate income tax returns. He prepared such returns for 1943 on which was reported one-half of the income of the crab meat business as shown on the data furnished to him. Attached to each return was a schedule setting forth the gross income, the expenses, and net profit of the business. At the foot of each schedule there appears the following: "G. L. Lewis and Leona Lewis, his wife, originally, when this crab plant was first started, around the year 1937, each putting in about one-half the original capital, and together worked up this business. Each owned *13 during the year 1943 and prior years, an undivided one-half interest in this business. The profits of the business, from time to time, have been divided between these parties in the purchase of bonds, or property purchased therewith in their joint names. Each is now making a separate return, each claiming one-half the profits, contributions, personal exemptions, 1942 tax and payments on the 1942 and 1943 taxes." The attorney neglected to file a partnership return for 1943. The attorney also prepared all the tax returns for the petitioners in the respective taxable years involved herein. He was not an accountant, or auditor, and did not examine the books of the crab meat business, but got the data from some member of the Lewis family. These data sheets were in a great part prepared by the petitioner. The books of the business were principally kept by the petitioner. The books were of single entry, and some of the entries were made by William when he worked at the plant. The entries were made in pencil and some of the figures were blurred and difficult to decipher. The revenue agent on making an investigation of the business found the records kept were inadequate and so illegible *14 that it was not possible to determine the correct income from the books and employed the net worth method of determining the annual income. By the use of the net worth method, the respondent increased the net income of the business for the taxable years involved as follows: Amount
Amount
Year
Reported
Determined
1943
$28,039.95
$34,782.37
1944
35,130.00
37,064.93
1945
34,275.52
41,851.70
The net income of the business, as determined by the respondent by the net worth method, has been accepted by the respective petitioners as correct. In his notice of deficiency the respondent determined that no valid partnership existed in the taxable years 1943, 1944, and 1945, and has taxed all of the income from the crab meat business for those years to the petitioner, Gordon L. Lewis. To the deficiency thus determined the respondent has added the 50 per cent addition to the tax for fraud with intent to evade taxes. As a precautionary measure the respondent determined a deficiency against Leona Lewis on the basis of her being an equal partner in 1943, and a partner with a one-third interest in the years 1944 and 1945. To the deficiency so determined the respondent *15 has imposed the 50 per cent addition to the tax for fraud. The respondent has determined a deficiency against William B. Lewis for the taxable years 1944 and 1945 on the basis of his being a partner with a one-third interest. To the deficiency so determined the respondent has imposed the 50 per cent addition to the tax for fraud. During the taxable year 1943 the petitioner and his wife Leona did intend in good faith to join together as partners in the conduct of the business of the G. L. Lewis Crabmeat Plant. During the taxable years 1944 and 1945 the petitioner, his wife, and their son William did intend in good faith to join together as partners in the conduct of the business of the G. L. Lewis Crabmeat Plant. No part of any of the deficiencies for the taxable years involved was due to fraud with intent to evade tax. Opinion LEMIRE, Judge: The petitioners having accepted the respondent's determination of the net income of the crab meat business by the use of the net worth method, the questions presented for our determination are whether the petitioners have established the existence of valid partnerships in the respective taxable periods involved, and whether any part *16 of the deficiencies was due to fraud with intent to evade tax. Both issues present questions of fact. The petitioners have the burden of establishing the bona fides of the partnerships and the respondent the burden of showing fraud with intent to evade tax. The validity of two partnerships are involved, i.e., the alleged partnership between the husband and wife in the taxable year 1943 and the subsequent extension of that partnership to include the son. If the two partnerships are to be judged by the criteria announced by the Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, we are convinced, in the light of the entire record, that the petitioners have successfully carried the burden of establishing that both of the partnerships in question were valid for federal tax purposes in each of the respective taxable years involved. For the taxable year 1943 the respondent has denied recognition of Leona Lewis as a bona fide partner with her husband. The grounds principally urged by the respondent in support of his position appear to be the absence of any formal partnership agreement, and the further fact that in prior years the husband has reported the income from *17 the crab meat business as sole proprietor. The record clearly establishes the facts upon which the respondent relies, but, we think, to emphasize their significance is to disregard the substance and realities of the situation as revealed by the entire record. We are not here dealing with the usual family arrangement where there is an established and successful business and the creation of a partnership is merely a device to reduce tax liability. The crab meat business was established in 1937 with an investment of approximately $300. Labor and not capital is the principal income-producing factor. The most important operation is the scientific removal of the crab meat from the carcass. Women are employed to do the meat picking. From the inception of the business the petitioner's wife Leona has had charge of the training and supervision of the women employees. From 1937 down to 1944 Leona Lewis had worked at the plant from 7 a.m. to closing time each working day, supervising one of the most vital activities of the business. Her efforts undoubtedly contributed as much to the success of the business as did the work performed by her husband. The importance of her relationship to the *18 business and her daily devotion to that part of the business entrusted to her charge is amply supported by the testimony of disinterested witnesses who came into almost daily contact with the business. Leona Lewis was paid no salary because she and her husband regarded the business as belonging to them equally. The record also reveals that decisions affecting the operation of the business were made after mutual discussion. In September 1941 Leona Lewis was authorized to draw against the bank account in which the income of the business was deposited. In the light of the manner in which the crab meat business was conducted, the absence of a written partnership agreement lacks material significance. Nor do we think the fact that prior to the taxable year 1943 the petitioner reported the entire income from the crab meat business as his individual income is of material consequence. Upon this record we think separate income tax returns could have been properly filed in the years prior to 1943. It is obvious that neither the petitioner nor his wife were aware of the tax advantage resulting from filing separate returns until so advised by their attorney in December 1943. The method of reporting *19 the income of the business in years prior to 1943 yielded increased revenue to the Government. In view of all the facts and circumstances, we are convinced that the petitioner and his wife Leona in good faith intended to and did conduct, as partners, the business known as the G. L. Lewis Crabmeat Plant in each of the taxable years involved herein and have so found as a fact. We pass to the question as to whether the partnership formed in January 1944 between the petitioner, his wife, and their son William, is to be recognized as valid for federal tax purposes. In our opinion its validity must be sustained. The facts in support of such conclusion may be briefly summarized. Prior to the establishment of the crab meat business here in question, William had some previous experience in crab meat packing and urged his parents to move to Florida for the purpose of engaging in such an enterprise. From the inception of the business in 1937 William did general work in the plant as a full-time employee and received a salary. His industry and devotion was deemed such an asset to his business that his parents decided to include him as a partner. To this end they consulted with an attorney *20 in December 1943 who prepared a written partnership agreement which was executed as of January 1, 1944. This agreement, inter alia, recites that the petitioner, his wife, and William were to conduct the business of the G. L. Lewis Crabmeat Plant as equal partners, each having a one-third interest therein. William made no investment of his own but was given a one-sixth interest by each of his parents. A new bank account was opened in the name of the G. L. Lewis Crabmeat Plant, a partnership, and all three partners were authorized to draw on such account. William continued to perform the same character of services he had performed prior to the execution of the new partnership agreement. The name of the partnership was registered under the assumed name statutes of Florida. The application for registration states that the owners of the business were Gordon L. Lewis, Leona Lewis, and W. B. Lewis, each owning a one-third interest. Application of the registration was duly published. In July 1944 William went into the armed services where he served until his discharge in September 1945. Upon receiving his discharge he resumed his duties in the plant. After the execution of the partnership *21 agreement of January 1, 1944, William withdrew the sum of $50 per week, except during the period of his absence in the armed services, when the payments were made to his wife. On February 15, 1946, William withdrew from the Jacksonville enterprise and formed a partnership with his brother and an uncle for the purpose of carrying on a crab meat and shrimp business at Brunswick, Georgia. During the period January 1, 1944, until February 15, 1946, William withdrew from the Jacksonville business an aggregate of approximately $22,000. A final accounting has been postponed until the final outcome of the tax litigation involving the Jacksonville enterprise. Upon William's withdrawal from the partnership with his parents the latter executed a new agreement, reciting the withdrawal of William. The agreement provided that the petitioner and his wife Leona would continue the G. L. Lewis Crabmeat Plant as equal partners. William was also a signatory to this latter agreement. The foregoing circumstances, we think, fully justify our finding of fact that during the taxable years 1944 and 1945 the petitioner, his wife Leona, and their son William, in good faith intended to and did conduct as partners *22 the crab meat business known as the G. L. Lewis Crabmeat Plant. We conclude that the respondent erred in taxing all of the income from the Jacksonville enterprise in the taxable years 1943, 1944, and 1945, to the petitioner, Gordon L. Lewis. In the taxable year 1943 such income is taxable to the petitioner and his wife Leona equally. In the taxable years 1944 and 1945, one-third of such income is taxable to each of the petitioners herein. The final question presented is whether any of the petitioners filed false and fraudulent returns with intent to evade tax in the years involved. In support of his contention that the 50 per cent additions to the tax for fraud should be sustained, the respondent relies mainly upon the fact that the income from the crab meat business was repeatedly understated in the taxable years in question. Under some circumstances, repeated understatements of taxable income have been held to sustain the 50 per cent addition to the tax for fraud. We are of the opinion that rule should not be applied under the circumstances revealed by this record. The business in which the petitioners engaged was a legitimate enterprise. A crude homemade bookkeeping system was *23 employed and the records were kept principally by the petitioner whose lack of knowledge of what constitutes proper bookkeeping is obvious. There is no evidence that the books were manipulated or of deliberate falsification. The Court has not been advised as to how the variances between the amounts reported and the income ascertained by the net worth method were arrived at. Reconstruction of income by the use of the net worth method is an approximation and does not accurately determine income. The evidence discloses no contradictory statements made by the respective petitioners. The petitioner testified that he endeavored to prepare accurate resume data from the book for use by the attorney who was to prepare the tax returns for the respective petitioners. The petitioners testified that they believed the returns they filed reflected their true income. Upon the entire record we are satisfied that the understatement of income in the taxable years involved was the result of a lax and negligent method of bookkeeping and that there was no fraudulent intent to evade tax. We hold that the respondent has failed to establish by substantial evidence that any of the petitioners were activated *24 by any fraudulent intent. Therefore, the 50 per cent additions to the tax for fraud in the respective taxable years involved in these proceedings are disallowed. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following are consolidated herewith: Gordon L. Lewis, Docket No. 36337, and William B. Lewis, Docket No. 36338.↩