**A. L. POWELL, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17037.**

United States Court of Appeals
Fifth Circuit.

June 24, 1958.

deQuincy V. Sutton, Meridian, Miss., for petitioner.

Marvin W. Weinstein, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney and Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C., Nelson P. Rose, Chief Counsel, John M. Morawski, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This petition for review attacks the holding of the Tax Court that appellant, A. L. Powell, was personally taxable with the 1944–1947 income which he claimed was the income of a family partnership consisting of himself and his wife.

The sole issue before this Court is whether a finding by the Tax Court that "there was no intention on the part of the petitioner and his wife, in good faith, to carry on the business of the Powell Company as partners" is clearly erroneous. In answering that question we take as a bench-mark the test set down by the Supreme Court in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659.

"The question is * * * whether * * * considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contri-

butions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

Following its findings of fact,[1] which included findings with respect to many of the criteria mentioned by the Supreme Court in Culbertson, the Tax Court explained its final conclusion in the following language:

"There was no written partnership agreement ever executed, and while the absence of such written agreement is not necessarily vital to petitioner's argument, it is nevertheless a fact to be considered. At no time did the name of petitioner's wife appear on any of the books maintained by the Powell Company. There is no indication of any capital

[1] "Petitioner, a resident of Mississippi, filed his individual income tax returns for the years 1943 through 1947 with the then collector of internal revenue for the district of Mississippi at Jackson, Mississippi.

"Petitioner married Mabel Ulmer in 1926. In 1939 the petitioner moved to Mobile, Alabama, where he became associated with M. C. Morgan in the purchases and sales of piling, cross-ties, and pulpwood. No written partnership agreement was executed in the formation of this enterprise. Mabel's name did not appear on the books of this enterprise, and no written instrument with respect to a partnership was ever executed by petitioner and his wife. The investment accounts of the petitioner and M. C. Morgan in this enterprise consisted of earnings, less drawings. Funds advanced to the enterprise were as follows:

"Notes Payable
A. L. Powell .............. $1,000
M. C. Morgan ............ 1,000

"Petitioner's wife at no time received any amount as a distribution of profits from the enterprise.

"In July 1941 the enterprise was discontinued and the petitioner, on or about the same date, commenced operations of a business in Lucedale, Mississippi, under the name of A. L. Powell Company, hereinafter called the Powell Company. Earnings accumulated to the petitioner's credit in the enterprise with Morgan were used by the petitioner in the operation of the new business. This business operated by the petitioner consisted of the acquisition of pulpwood which he sold to the International Paper Company under an exclusive dealership. This exclusive dealership was at all times held in the petitioner's name and it designated the area in which the petitioner could acquire pulpwood and specified the railroads to be used as carriers. The Powell Company also acquired cross-ties which were sold to three different railroad companies. The Powell Company was incorporated on June 30, 1947.

"Petitioner's wife continued to live in Mobile, Alabama, until 1942, when a residence was purchased in Laurel, Mississippi, for the amount of $4,480.12. She has lived continuously in Laurel since 1942. Petitioner came to Laurel only on week ends. Petitioner's wife did some clerical work for the Powell Company on week ends at Laurel. During the years 1940 through 1947, the petitioner's wife was ill and was under the care of a doctor. She was required to rest at least two hours each day.

"All the books and records of the Powell Company were kept at Lucedale, where a full-time bookkeeper was employed. The bank account of the Powell Company was in the petitioner's name. No written partnership agreement was executed by petitioner and his wife in connection with the operation of the Powell Company. The books and records of the Powell Company did not contain a capital account for petitioner's wife, and she exercised no control over the distribution of profits from the Powell Company. Petitioner gave his wife monthly allowances during the period here involved to cover her living expenses.

\* \* \* \* \*

"Petitioner, for the years 1941 through 1943, reported all the income earned from his operations in his individual income tax returns, excluding the earnings attributable to M. C. Morgan. The Federal income tax returns filed by the petitioner for the years 1944 through 1947 show income received from the Powell Company as a distribution of partnership earnings.

"There was no intention on the part of the petitioner and his wife, in good faith, to carry on the business of the Powell Company as partners."

account allocating any share of the earnings of the enterprise to her. There is no indication of any capital contribution to the enterprise by the wife. Throughout the years here involved the petitioner's wife did not receive any distribution of partnership income, but instead, the petitioner gave her, each month, her necessary living expenses. It is obvious that petitioner's wife did not have any control over the income of the alleged partnership, and that, in fact, none was ever distributed to her. Moreover, petitioner's wife displayed a complete unawareness of the returns filed by the alleged partnership in the years here involved. Except for some minor clerical duties, mostly on week ends, petitioner's wife did not participate in the management or daily affairs of the Powell Company.

"Although the alleged partnership was supposed to have been in existence since 1941, the evidence shows that the petitioners, up through the year 1943, reported on his individual income tax returns all of the income from the alleged partnership, and it was only after a change in accountants that the returns filed by petitioner, subsequent to 1943, showed the income received from the Powell Company as a distribution of partnership earnings.

"It also appears that the bank accounts of the enterprise were in petitioner's name alone. Also, the exclusive dealership contract with the International Paper Company for the purchase and sale of pulpwood, which was the bulk of petitioner's business operations, was in the name of petitioner alone. It is also significant that the full-time bookkeeper who managed the office of the Powell Company and kept all the books and records, had only the vaguest notion, if it can be called even that, that a partnership ever existed in the conduct of the Powell Company.

"There is some testimony that the petitioner's wife made a capital contribution of $1,000 to an enterprise conducted by petitioner and Morgan prior to the operations of the Powell Company. The argument seems to be that this capital contribution showed a desire on the part of petitioner's wife to be a partner in the earlier enterprise and that when such enterprise was disbanded and the accumulated earnings, excluding Morgan's share, were put into the Powell Company, it represented a capital contribution by the petitioner's wife, as well as by the petitioner, to the Powell Company. We are convinced, however, that petitioner's wife did not make any capital contribution to the earlier enterprise. The only mention of $1,000 appears on the books of such enterprise as a note payable to petitioner. There is no evidence from which we can make out any intent to treat this $1,000 as a capital contribution. Moreover, we cannot discover any intent on the part of petitioner's wife to become a partner in the conduct of such earlier enterprise.

"Assuming, however, that some capital contribution by the wife can be traced through the earlier enterprise into the Powell Company, such fact alone will not be decisive. As pointed out in the Culbertson case, supra, the capital contribution is only one of several factors to be examined."

This statement by the Tax Court is perhaps too strong a statement of the evidence favoring the Commissioner's view. The statement, for instance, that the wife did not receive any distribution of partnership income is not strictly accurate, since the parties testified that all except the amount withdrawn by the husband for his own and his family expenses was allowed to accumulate until dissolution of the partnership, and at that time fifty per cent of the net worth was exchanged for fifty per cent of the stock of the corporation that was then formed

and was issued to the wife and the other fifty per cent was exchanged for fifty per cent of the stock issued to the husband.

So, too, is the statement in the Tax Court's opinion: "There is no evidence from which we can make out any intent to treat this $1,000 as a capital contribution" somewhat misleading unless it is read as "we do not credit the testimony of the parties that it was their intent to treat this $1,000 as a capital contribution." It must be recognized that the two parties did testify, although very vaguely, that there was an intent that the money used by the husband to start the partnership with Morgan was the foundation of a 50-50 partnership between husband and wife.

We think it clear, however, that the record as a whole fully supports the findings and conclusions of the Tax Court. There are inconsistencies between the testimony of the husband and wife on several points. For instance the wife testified [2] that she and her husband and Morgan were partners, Morgan having a one-half interest and she and her husband a one-fourth interest each. The husband did not mention any such partnership, and petitioner's brief is vague as to the exact relationship, saying that: "The real legal implication from the evidence is that, alternatively, the wife was a joint venturer or sub-partner with her husband in Mobile and, thereafter, a half owner in the operation, or she was the owner of a resultant trust interest under the Mississippi law." There is no evidence that any agreement was ever made between either Mr. or Mrs. Powell and Morgan to the effect that Mrs. Powell was a partner of Morgan's, yet this is the partnership she said she joined in 1939.

The record is clear on two points of much significance: (1) There was absolutely no public holding out of a partnership. Petitioner's brief conceded that even the one full-time employee of the Powell Company, the bookkeeper, "had only the vaguest of notions about a partnership." This is evident from his testimony.[3] There is no evidence that any other person or the bank or the large corporation dealing with Powell was ever informed that Mrs. Powell was a partner. (2) There is no evidence that Mrs. Powell ever exercised or asserted any dominion over any of the company's funds or exercised any judgment or managerial prerogative in the operation of the business or that she knew she had any right to do so.

Finally, the fact that petitioner, during the first four years of the alleged partnership, three of which were in Lucedale, Mississippi, and were thus the identical operation that later made partnership returns of income, personally reported the income from the business as a proprietorship wholly owned by him is a strong admission against interest which the Tax Court could and did consider.

2. Mrs. Powell testified on deposition, and was not present in court.

3. His testimony as to his knowledge of the existence of a partnership follows:
"Q. Insofar as the question of a possible partnership between Mr. Powell and his wife, Mrs. Mabel Ulmer Powell, will you please state whether you had any personal actual knowledge of such a partnership? A. No, sir, not at first, the latter part we did. We had an idea, naturally, that she was interested.
"Q. I didn't understand you? A. I said, as the business increased the latter part, we had a knowledge of it.
"Q. How did you gain the knowledge of her interest in the business? A. Well, the main thing Mr. Powell told me that anything that came up, that if I wanted to get in touch with him any time or in any way, that for me to call her house, and that she at all times knew where I could locate him, which I did, sir.
"Q. Did you have any other basis for any understanding of the fact that Mrs. Powell might or might not have been a partner with A. L. Powell? A. Just only of my own ideas that she was connected there, but otherwise just what I stated, sir.
"Q. And you gained that idea from what, the way the business was transacted, or what? A. That is right, the way the business was being transacted. And the way he referred to her, that she must have been in some way interested in it."

Petitioner earnestly contends that no one of the facts found against him by the Tax Court would warrant a finding against the existence of a partnership. This may well be true. However, we know of no case in which so many of the significant circumstances mentioned by the Supreme Court in the Culbertson case are advised to the taxpayer and yet an appellate court has found it proper to reverse a finding of no partnership by the Tax Court or a District Court.

We think we cannot do so here. The findings of the Tax Court have support in the evidence. They are not clearly erroneous and we must therefore affirm its judgment.

Affirmed.