JOHN A. MORRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19779.   Promulgated December 21, 1949.

*Paul V. Wolfe, Esq.*, for the petitioner.
*Scott A. Dahlquist, Esq.*, for the respondent.

1022

OPINION.

Arundell, *Judge*: The issues in this case are whether the wife of the petitioner was a bona fide partner in the brokerage firm for the purpose of carrying on a business and sharing in its profits, or whether the partnership was a mere sham, utilized for the purpose of reducing taxpayer's true tax liability by a pretended distribution of income; or, in the alternative, whether the wife of the petitioner was a bona fide creditor of the partnership.

We have found that Edna B. Morris, wife of the petitioner, was a bona fide partner in the brokerage firm. In so finding we have been guided by the tests suggested by the Supreme Court in *Commissioner v. Culbertson*, 337 U. S. 733, 742, wherein it is stated:

* * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the *Tower* case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

The partnership agreement provided that Edna B. Morris was to be a limited partner, and, as such, she was precluded by New York Partnership Law, art. 8, sec. 93,[1] from rendering services to the brokerage firm, and consequently no attempt has been made by petitioner to show that his wife in fact rendered services other than of the most casual or trivial nature. But a partnership may yet exist where only

---

[1] McKinney's Consolidated Laws of New York, Ann., Book 38.

capital and no services are contributed. *Commissioner* v. *Culbertson, supra.*

It is respondent's position, however, that Mrs. Morris' capital contribution had its origin in gifts from her husband, the petitioner, and consequently it did not represent an independent capital contribution on her part sufficient to justify her recognition as a bona fide partner. This contention, we think, is no longer tenable since *Culbertson*, as the following quoted language from that opinion makes clear:

> The Tax Court's isolation of "original capital" as an essential of membership in a family partnership also indicates an erroneous reading of the *Tower* opinion. We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in *Helvering* v. *Clifford, supra*. The facts may indicate, on the contrary, that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes.

The petitioner made an absolute gift to his wife of securities and cash, the total of which represented but 5 or 6 per cent of his total wealth. In making the gifts, petitioner had told his wife that she was to have absolute control of the securities and money as he wanted to interest her in their management because she would undoubtedly inherit a substantial estate from him. He retained no control and stated no limitations or controls over her ownership. The respondent has not attempted to show the contrary. Instead, counsel for respondent has said that he knows of "no question about the complete and unfettered transfer of the stocks, and the cash to her credit."

Petitioner and his wife at all times maintained separate bank accounts and had no joint bank accounts. Neither had a power of attorney in respect to any of the cash, securities, or other property of the other, nor did Mrs. Morris ever return any part of the gifts, above referred to, to petitioner, and the accounts of petitioner and his wife were kept separately on the books of the partnership.

The use that Edna B. Morris made of the income derived from her capital contribution also is indicative of the genuineness of the partnership. The petitioner exercised no control over the withdrawal or use of that money by his wife. The money received by Mrs. Morris was put in her personal bank account and was expended as she saw fit. It was not used to discharge family obligations that were properly the petitioner's, but the money was devoted to her own personal uses, for her own social activities, to purchase personal luxuries, to make gifts to her friends, to contribute to charities in which she was interested, to pay taxes, and to increase her personal securities portfolio. Petitioner continued to discharge his family obligations, to pay household expenses such as rent, wages of three family servants, a child's clothing and expenses, and the major expenses of maintaining his wife's wardrobe.

Circumstances surrounding the partnership agreement also indicate a valid business purpose. Thus, the method of forming the partnership, viz., by means of a limited partnership, is a common method of financing stock brokerage houses in New York. By actual count, about 40 per cent of the houses on the New York Stock Exchange have limited partners. Again, while it is apparent that petitioner, along with Robert C. Winmill, was one of the firm's two dominant partners and had the final decision in business policy matters, the action with respect to the admission of a new partner, Edna B. Morris, had to meet with the approval of all ten partners in the firm. While all the partners, limited or general, received 6 per cent interest on the sums invested in the business, the sliding scale of profits which gave to the active partners a greater share in the profits is not without significance in showing the business basis of the agreement. Nor was petitioner's participation in the profits of the business lessened when his wife became a partner, but, on the contrary, his share of the profits was increased from 10 per cent to 11½ per cent.

The Supreme Court said in the *Culbertson* case (p. 744) :

* * * If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. [Emphasis supplied.]

We think that under the facts as detailed in our findings of fact and under the rationale of the Supreme Court's decision in the *Culbertson* case, Edna B. Morris should be recognized as a partner in the partnership of Gude, Winmill & Co.

It has been suggested that the conclusion we have reached here is contrary to our holding in *Ralph C. Hitchcock*, 12 T. C. 22, wherein we refused to recognize for income tax purposes the validity of the limited partnership involved in that case. In the *Hitchcock* case we took the view that the petitioner, as donor, never intended to absolutely and irrevocably divest himself of the dominion and control of the subject matter of his purported gifts to his children, and we pointed out that the children were not at liberty at any time to withdraw or assign their interests in the business or possessed of an unqualified right to receive their full share of each year's earnings. In the instant case petitioner's gift to his wife of cash and securities was complete and absolute prior to the formation of the partnership, and Mrs. Morris received each year her share of the partnership earnings and disposed of them as she saw fit. We think on the facts the cases are clearly distinguishable.

Because the second issue raised by the petitioner, viz., whether or not Edna B. Morris is a bona fide creditor of the firm, is in the alter-

native, it is rendered moot by our finding with respect to the wife's status as a bona fide partner.

Since we have found that the petitioner's wife was a bona fide partner in the firm during the calendar year 1944, the amounts of $8,741.48 of ordinary income and $242.65 of net short term capital gain reported by her as distributable income from that business are properly taxable to her rather than petitioner. On this issue the Commissioner is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: The brokerage firm of Gude, Winmill & Co. was, in my view, a partnership only of its members designated "general partners." All of such general partners, among whom petitioner was included, contributed services in the operation of the firm's business. Only four of them contributed capital. Such contribution constituted capital investments which were subject to the risks of the business. In the distribution of the partnership profits it was provided in the partnership contract that interest on such capital investments at the rate of 6 per cent per annum should be paid and that the remaining profits should be apportioned on the basis of stipulated percentages thereof. Such percentages were obviously computed and determined solely upon the estimated value to the firm of the services of the respective general partners. Thus, it appears that such arrangement embraces all the elements necessary to constitute a partnership in fact and in law.

It is my opinion that Edna B. Morris, wife of the petitioner, and Viola T. Winmill, wife of the general partner Robert C. Winmill, who are named in the partnership agreement of Gude, Winmill & Co. as limited partners, do not, under the facts here, qualify in any sense as partners in such firm. The status of Viola T. Winmill in this connection is mentioned only because her status is the same as that of Edna B. Morris, with which we are here concerned. Neither of the so-called limited partners made a contribution to the capital of the firm. Neither of them had at any time a capital investment in the firm. Each merely loaned money to the firm. The money so loaned bore interest at the rate of 6 per cent per annum and was not subject to the risk of the business of the firm. Each of the limited partners could have legally demanded a return of her loan at the end of the partnership term, to wit, April 30, 1945. Not only do the articles of copartnership provide for the repayment of the loans, but also provide in effect that the general partners shall hold the limited partners harmless from partnership losses.

Under the articles of copartnership the limited partners were to perform no services for the partnership and were to have no voice in the formulation of the policies or the conduct of the business of the firm. In fact, they performed no services and took no part whatever in the conduct of the firm's business.

The rate of interest provided for the use of the money loaned by the limited partners was by agreement of the partners fixed as a fair compensation for such use.

There was paid to Edna B. Morris monthly during the tax year involved the specified rate of interest on her loan. In addition thereto there was credited to her on the books of the firm the stipulated 2 per cent participation in the profits of the firm's business, no part of which was used in the firm's business. It was used to pay her taxes and to purchase securities in her name and for her account.

I think it clear on the above recital of facts, which is supported by the record, that Edna B. Morris did not contribute either capital or services to the partnership and that she did not join or intend to "join together in the present conduct of the enterprise" of the partnership, and that she did not act "with a business purpose" for the partnership in advancing the $80,000 loan. The only business purpose which she had in making such loan was the personal purpose of receiving profit from such advancement as a loan.

It can not be seriously contended under the facts here that Edna B. Morris earned or contributed to the earning of the profits of the partnership either by service rendered or by the money loaned. I think, therefore, it must be held that the profits which she received under the 2 per cent participation arrangement are attributable solely to the earnings of her husband, the petitioner herein, and, accordingly, that he is taxable thereon.

HARRON and OPPER, *JJ.*, agree with this dissent.