WESTERN CONSTRUCTION COMPANY, PETITIONER, ET AL.,[1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15495, 15496, 15497, 15498, 15499, 15500, 15586, 15588.

Promulgated March 22, 1950.

*Ralph B. Potts, Esq.*, for the petitioners.
*Wilford H. Payne, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Albin Johnson; Ellen M. Johnson; Huldah M. Johnson; George J. Johnson; J. A. Johnson; Roberta M. Johnson; and Lloyd W. Johnson.

456

458

460

466

BLACK, *Judge*: There are two issues presented in these proceedings; however, they are in the alternative. The first issue is whether petitioner Western Construction Co. is an association taxable as a corporation. If it is held that Western Construction Co. is not taxable as a corporation, but is instead a partnership, then we must decide the second issue, namely, the composition of the partnership for tax purposes. The respondent concedes that he has made inconsistent determinations in determining that Western Construction Co. was an association taxable as a corporation and then also determining that the same business during the same period was a general partnership composed of three members. He concedes that both determinations can not stand.

*Issue 1.*—Respondent first contends that petitioner Western Construction Co. resembles an association in corporate form and is, therefore, taxable as a corporation.[5] *Morrissey* v. *Commissioner*, 296 U. S. 344, is cited by respondent as the basic authority for taxing Western Construction Co. as a corporation, but petitioners also rely upon the *Morrissey* case to sustain their argument that Western Construction Co. is taxable as a partnership. In the *Morrissey* case the Court said: "The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity." Therefore, it is for us to determine whether Western Construction Co. resembles a corporation to a sufficient extent as to make it taxable as such.

Petitioner Western Construction Co. was created as a limited partnership under the laws of the State of Washington, the pertinent sections of which are printed in the margin.[6] This designation as a partnership is not conclusive of its being such for tax purposes. To ascertain whether Western Construction Co. is taxable as a corporation or as a partnership, it is necessary to find what the rights and duties of the partners are as between themselves and the public. Therefore, we must examine the statutes of the State of Washington, by virtue of which Western Construction Co. exists as a limited partnership in Washington, and the certificate of the formation of the partnership filed with the county auditor.

[5] See footnotes 2 and 3, *supra*.

[6] Remington's Revised Statutes of Washington, Ann., vol. 10.

"§ 9966. *Limited partnership may be formed.* Limited partnership for the transaction of mercantile, mechanical, or manufacturing business may be formed within this state, by two or more persons, upon the terms and subject to the conditions contained in this chapter.

"§ 9967. *Of whom composed, and liability of members.* A limited partnership may consist of two or more persons, who are known and called general partners, and are jointly liable as general partners now are by law, and of two or more persons who shall contribute to the common stock a specific sum in actual money as capital, and are known and called special partners, and are not personally liable for any of the debts of the partnership, except as in this chapter specially provided.

\* \* \* \* \* \* \*

"§ 9970. *Renewal of limited partnership.* A limited partnership may be continued or renewed by making, acknowledging, filing, and publishing a certificate thereof, in the manner provided in this chapter for the formation of such partnership originally, and every such partnership, not renewed or continued as herein provided, from and after the expiration thereof according to the original certificate, shall be a general partnership.

\* \* \* \* \* \* \*

"§ 9973. *Suits by and against limited partnership—Parties.* All actions, suits, or proceedings respecting the business of such partnership shall be prosecuted by and against the general partners only, except in those cases where special partners or partnerships are to be deemed general partners or partnerships, in which case all the partners deemed general partners may join therein; and excepting also those cases where special partners are severally liable on account of sums or amounts received or withdrawn from the capital stock, as provided in the last preceding section.

"§ 9974. *Dissolution, how may be accomplished.* No dissolution of a limited partnership shall take place, except by operation of law, before the time specified in the certificate of partnership, unless a notice of such dissolution, subscribed by the general and special partners, is filed with the original certificate of partnership, or the certificate, if any, renewing or continuing such partnership, nor unless a copy of such notice be published for the time and in the manner prescribed for the publication of the certificate of partnership.

"§ 9975. *Liabilities and rights of members of firm.* In all cases not otherwise provided for in this chapter, all the members of limited partnerships shall be subject to all the liabilities and entitled to all the rights of general partners."

The certificate of formation of the limited partnership [7] reserves the following powers: The duration of the partnership is 10 years; [8] the general partners are given the right to admit additional limited partners upon the same terms expressed in this certificate; [9] the management is vested in the general partners; [10] the remaining general partners are given the right to continue the business upon the death or retirement of a general or limited partner; [11] the interest of a limited partner is transferable only with the approval of the general partners; [12] and no general partner may demand or receive any property other than cash in return for his contribution. [13]

We think that the case of *Glensder Textile Co.*, 46 B. T. A. 176, is indistinguishable from the instant proceedings, except that Glensder Textile Co. was a limited partnership formed under the Uniform Limited Partnership Act of the State of New York, whereas the limited partnership here was organized under the laws of the State of Washington. There seems to be no substantial difference between the two statutes. In the *Glensder Textile Co.* case we held that the limited partnership did not resemble a corporation, but was more closely akin to a general partnership. See also *J. A. Riggs Tractor Co.*, 6 T. C. 889; *George Brothers & Co.*, 41 B. T. A. 287. In the *Glensder Textile Co.* case, after discussing in considerable detail the several provisions of the limited partnership agreement there present which were similar in character to those of the limited partnership agreement in the instant case, we said:

> We must conclude, therefore, after an examination of the organization and legal powers and liabilities of the members of the limited partnership before us, that it does not bear such a resemblance to an association or operate effectively as such so as to justify our inclusion of it in that category for tax purposes. Although a limited partnership, it was still a partnership, and should be treated as such under the statute. The statute provides a category for individuals doing business in partnership and deriving income thus; and we may not disregard it where the likeness to an association is no plainer than it is here.

In the *Glensder Textile Co.* case we set out in the margin the applicable statute and the Treasury regulations with reference to limited partnerships. They are also set out in our footnotes 2 and 3 herein and it is unnecessary to reprint them here. Following our decision in that case, we hold that petitioner Western Construction Co. was not an association taxable as a corporation. On this issue petitioner is sustained.

[7] Findings of fact, page 6, *supra*.
[8] Id., arts. V and VII.
[9] Id., art. IX.
[10] Id., art. X.
[11] Id., art. X.
[12] Id., art. XII.
[13] Id., art. XIII.

*Issue 2.*—As we have held that Western Construction Co. is a partnership for tax purposes, we must now determine the composition of that partnership.

Respondent contends that if Western Construction Co. is held to be a partnership for Federal tax purposes, it consists solely of the three general partners. Petitioners contend that Western Construction Co. is a partnership for tax purposes and includes all the limited partners. Both parties cite the cases of *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293. Since the hearing of these proceedings and the filing of briefs, the Supreme Court has decided the case of *Commissioner* v. *Culbertson*, 337 U. S. 733. From these cases it is apparent that in order to determine the issue it is necessary for us to find whether Western Construction Co. is a bona fide business partnership, and upon such finding the tax consequences rest.

Respondent argues that the formal documents executed in 1942 and 1943 creating a limited partnership under the laws of the State of Washington are nothing more than a reallocation of the income attributable to the general partners, and that there was no real intent to create a partnership for business purposes. Petitioners argue that the partnership is a result of a bona fide intent of the general and limited partners to join together for the purposes of carrying on the construction business and to share in the profits and losses. Their intention in this respect is a question of fact, to be determined from the agreement and by their conduct in its execution and in the subsequent operation of the business. As was said in *Commissioner* v. *Culbertson, supra:*

\* \* \* The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the *Tower* case, but whether, considering all the facts— the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. \* \* \*

At this juncture it seems appropriate to point out that the Commissioner himself in his determination of the deficiencies against Western Construction Co. determined that Western Construction Co. should be recognized as a bona fide organization in which the members of it joined together for a business purpose. He contends, however, that the organization should be treated as an association taxable as a corporation and not as a limited partnership. That is his first and main contention. Failing in that, he contends, in the alternative, that the partnership should be held a general partnership, with no recognition given to the limited partners.

The record shows that prior to the formation of the limited partnership the general partners were having difficulty in getting the larger and more lucrative Government contracts because of their inadequate financial backing. This lack of capital made it extremely difficult to get the necessary construction bonds. To obviate this difficulty, the partners attempted to get outside capital, but were unsuccessful, and the one time a joint venture was attempted to obtain the necessary bond Western Construction Co. came out on the short end of the bargain. In bringing in the children as limited partners, $60,000 was added to the individual assets of the general partners by reason of the personal notes given by the children to their respective fathers. This was a factor of considerable importance to the financial status of the general partners and, through them, to the limited partnership.

The evidence convinces us that these notes were not given as a part of a scheme to avoid taxes, but were given to increase the financial strength of the partnership. Cf. *O. H. Delchamps*, 13 T. C. 281. In the *Delchamps* case, two brothers and their sister, equal partners in a chain grocery business, admitted the brothers' wives as partners, each brother contributing two-fifths of his interest to his wife and the sister a one-fifth of her interest to each wife. The admission of the wives as partners was necessary for the purpose of securing bank credit for the business. Under those circumstances we held that the partnership was formed for a valid business purpose, with a bona fide intention to form a business partnership. We think the *Delchamps* case supports the validity of the partnership agreement here involved. It is true that these notes were never used as collateral by the partnership, but shortly after its formation the limited partnership borrowed an additional $50,000 from a bank and the notes were listed with bonding companies as a part of the personal assets of the general partners. There was no plan whereby these notes would be payable only out of profits—it was a business transaction in which the adult children participated with full knowledge of the attending responsibilities in signing these notes, and with the consent of the sons-in-law.

Profits were distributed as in any normal partnership and the limited partners had the right to withdraw their shares of the profits at any time and use them for whatever they might desire. The majority of the limited partners did not withdraw a great deal of their profits; however, they had the right to do so and some of the limited partners withdrew a considerable portion of their distributive shares and used the funds as they saw fit. Cf. *John A. Morris*, 13 T. C. 1020. The *Morris* case involved a limited partnership organized under the laws of the State of New York, as was the limited partnership in the *Glensder Textile Co.* case, *supra*. In the *Morris* case we held that Edna B. Morris, wife of the taxpayer, John A. Morris, was a partner

in the limited partnership there involved, even though the capital which she contributed to the partnership came from a prior gift which she received from her husband and she did not render any services or participate in the management of the business. We based our holding that she was a limited partner on a finding which we made from the evidence that "Petitioner, his wife, and the other members of the brokerage firm formed a bona fide partnership and really and truly intended to join together for the purpose of carrying on the business as a partnership." We relied as our chief authority for the holding upon *Commissioner* v. *Culbertson, supra.*

We think that the evidence shows that the three Johnson brothers had a real desire to have their children become partners in the Western Construction Co. The sons not only gave their notes, but also contributed their engineering skill which the general partners lacked. Their services were of substantial value to the partnership. All of the limited partners were conscious of the fact that the partnership was real and the promissory notes given their respective fathers were binding obligations.

Looking at the evidence as a whole, we think that petitioner Western Construction Co. was intended and created as a valid business partnership, including all the limited partners, and must, therefore, be recognized as such for tax purposes. *John A. Morris, supra.*

The parties have stipulated that each of the three general partners expended $1,200 "for each of the years 1942, 1943, and 1944 in excess of that determined and allowed by respondent in the deficiency notices, as business expenses, covering depreciation, insurance and operating expenses of automobiles, and also entertainment and travel expenses." From the stipulation it is apparent that a total of $3,600 for each of these years was expended as additional ordinary and necessary expenses of the business. These expenses are not allowable as a deduction from the personal returns of the general partners, as they are partnership expenses and are so deductible. *Hiram C. Wilson,* 17 B. T. A. 976. In a recomputation under Rule 50, these expenses should be deducted in computing partnership net income for each of the years 1942, 1943, and 1944.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

TURNER, *J.*, dissents.

---

OPPER, *J.*, dissenting: The two issues before us can not be neatly severed, so that we can separately deal with the reality of the partnership and its resemblance to a corporation. For the first time since *Tower, Lusthaus,* and *Culbertson,* this case raises the question whether a family enterprise cast in the form of a limited partnership, just

because it truly represents an actual form of doing business, is not in reality more nearly like a corporation than any other business organism. The very aspects upon which petitioners rely to strengthen their claim of a valid partnership and yet to explain the relation to the business of the "limited partners" are in fact and in essence the *Morrissey* [1] type of corporate characteristics.[2]

In *Glensder Textile Co.*, 46 B. T. A. 176, decided before *Tower* and *Lusthaus*, the Board was not confronted by the juxtaposition of a developed family partnership rule with the similarity of limited family partnerships to corporations, and hence it can not be regarded as controlling this question. It is for that reason, at least, less persuasive than a more recent decision of this Court holding certain family limited partnerships to be taxable as corporations.[3]  *Giant Auto Parts, Ltd.*, 13 T. C. 307.

Without placing undue reliance on relevant provisions of local law, it can not altogether lack significance that the Constitution of the State of Washington, in the article referring to "corporations," provides that : "All laws relating to corporations may be altered, amended, or repealed by the legislature at any time, and all corporations doing business in this State may, as to such business, be regulated, limited, or restrained by law," art. 12, sec. 1; that "the term 'corporations,' as used in this article shall be construed to include all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or partnerships * * *," art. 12, sec. 5; and that the Supreme Court of the State has declared that "Under constitutional provisions similar to Section 5, article 12, *supra*, it is almost uniformly held that joint-stock companies and *limited partnerships* organized under statutory authority *are in fact corporations*." *State ex rel. Range* v. *Hinkle*, 126 Wash. 581; 219 Pac. 41, 42. (Emphasis added.)

And while nomenclature is not, of course, decisive, it may nevertheless be added that the Washington statutes under which petitioner "company" was formed refer to the capital of the enterprise as "common stock" and "capital stock," and that in one instance it is provided: "* * * no part of the capital stock thereof shall be withdrawn, nor any division of interests be made, so as to reduce such capital stock

---

[1] See footnote 4, *infra*.

[2] "* * * namely, centralized control and management, limited liability, transferability of interests, title to property held in the name of the business entity, continuity of enterprise, and sustained operation of the business for profit. * * *" (*Giant Auto Parts, Ltd.*, 13 T. C. 307, 315.)

[3] "It is true that the ownership of the business was confined to a few members of an intimate family group, that no regular or formal meetings were held, that no minutes were kept, and that no election of officers was held after the original execution of the partnership agreement. The petitioner's failure to observe the formalities in respect to meetings and elections and the fact that it was owned by a small number of persons have no bearing upon its classification as a corporation or partnership. * * *" (*Giant Auto Parts, Ltd.*, *supra*.)

below the sum stated in the certificate of partnership * * *." Remington's Revised Statutes, Washington, vol. 10, secs. 9967, 9972. In fact, if the general partners are thought of as common stockholders, and the special partners as holders of participating preferred stock, the entire arrangement would be identical in all respects with a corporate structure, except for the unlimited liability of the general partners. Since it is similarity and not identity which constitutes the test, *Morrissey* v. *Commissioner*,[4] and since it is the interest of the special partners, and not that of the general partners, which raises the real present issue on both alternative contentions, it seems to me inescapable that this arrangement fails, on the one hand, to bear any resemblance to a true and actual partnership of all the participants, see Hill, *J.*, dissenting in *John A. Morris*, 13 T. C. 1020, but that, on the other, it does resemble and almost duplicates a corporation, and that reality thus requires the tax to be imposed upon it as a corporation and not as a partnership.

LEECH, HILL, DISNEY, HARRON, and LEMIRE, *JJ.*, agree with this dissent.

---

[4] 296 U. S. 344:
"*The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity.* * * * Thus an association may not have 'directors' or 'officers,' but the 'trustees' may function 'in much the same manner as the directors in a corporation' for the purpose of carrying on the enterprise. The regulatory provisions of the trust instrument may take the place of 'by-laws.' And * * * it cannot be considered to be essential to the existence of an association that those beneficially interested should hold meetings or elect their representatives. Again * * * the test of an association is not to be found in the mere formal evidence of interests or in a particular method of transfer.
*       *       *       *       *       *       *
"It is no answer to say that these advantages flow from the very nature of trusts [here limited partnerships]. * * * The suggestion ignores the postulate that we are considering those trusts [family partnerships] which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking, trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from [ordinary] partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations." (Emphasis and bracketed language added.)