Gabriel T. Pap and Ilona Pap v. Commissioner.
Pap v. Commissioner
Docket No. 83077.
United States Tax Court
T.C. Memo 1962-82; 1962 Tax Ct. Memo LEXIS 229; 21 T.C.M. (CCH) 417; T.C.M. (RIA) 62082; April 10, 1962
*229 Gabriel T. Pap, Esq., pro se., 57 E. 67th St., New York, N. Y. Joseph M. Touhill, Esq., for the respondent. RAUM
Memorandum Opinion RAUM, Judge: Petitioners are husband and wife, and reside at 51 East 67th Street, New York, New York. They filed their joint income tax returns for the years in issue with the district director of internal revenue, Upper Manhattan District, New York. The Commissioner determined deficiencies in income tax against them as follows: Year
Deficiency
1953
$ 738.44
1954
600.29
1955
1,724.16 The husband will sometimes hereinafter be referred to as the petitioner. The only matter presently in controversy is whether petitioners in fact sustained losses by reason of confiscation of two business properties in Hungary allegedly owned by them in 1952. If such losses were in fact sustained, the Government does not now challenge petitioners' right to use them as carryovers to the years before us. Moreover, if petitioners owned the properties in 1952, it is firmly settled that Decree No. 4 of the Praesidium of the Hungarian People's Republic, issued February 17, 1952, effected a confiscation of such properties resulting in deductible *230 losses for 1952. Peter S. Elek, 30 T.C. 731. Indeed, the Commissioner has announced his acquiescence in the Elek decision. Acq. 1958-2 C.B. 5. There remains therefore merely the determination as to petitioners' investment in and ownership of the properties in question and the adjusted basis of those properties at the time of confiscation. Upon the basis of the evidence presented to us, which we regard as strong and convincing, we make the following findings: 1. Petitioners were natives and residents of Hungary. The husband was a successful lawyer in Budapest. They left Hungary as refugees in September, 1947, and became residents of the United States in October, 1947. 2. Kazinczy property. In February 1935 petitioners jointly purchased property at 11 Kazinczy-utca, Budapest, consisting of land and a four story building containing two stores and 45 rental apartments. They paid 133,000 pengos therefor. At a subsequent time, in connection with the purchase of the Fo-utca property hereinafter described, petitioners borrowed a substantial amount of money on a mortgage note with respect to the Kazinczy property. They paid off that note before leaving Hungary *231 in 1947. One-fourth of the purchase price was allocable to the land and three-fourths to the building. Petitioners made improvements to the building in 1937 at a cost of 7,200 pengos. The building suffered slight damage during World War II, but that damage was repaired in 1946. The building was old fashioned, and the parties now agree that depreciation should be computed at the rate of 3 1/2 percent per annum in arriving at an adjusted basis. Petitioner managed this property from the time of its acquisition until he left Hungary in 1947. During that period he collected the rents and paid real estate taxes as well as other expenses and carrying charges with respect to the property. Thereafter, an agent appointed by him collected the rents, paid the real estate taxes, etc., and deposited the surplus, if any, in an account in an accredited bank. However, that account was blocked and petitioners were unable to obtain any transfer of funds therefrom to the United States. Decree No. 4, referred to above, resulted in a confiscation of petitioners' rights in this property. They were entitled to a deduction for such loss in 1952. 3. Fo-utca property. On December 5, 1935, petitioners jointly *232 purchased an unimproved lot at 37-A Fo-utca, Budapest, for 66,138 pengos. The purchase price was paid in part out of fees earned by petitioner and in part out of the proceeds of a mortgage on the Kazinczy property described above. Thereafter petitioners constructed a modern building of reinforced concrete on the lot, with elevator, central heating, and other improvements. Construction was completed on July 31, 1936. The building had four stores and 25 apartments, all rented. Petitioners paid 305,000 pengos for the building. Part of such payment was in the form of a mortgage that was finally discharged in 1946. In 1940 the husband donated his one-half interest in this property to his wife. Near the end of World War II the building suffered heavy war damage, to the extent of one-third of the building. Such damage does not appear to have been repaired, and the basis of the building at that time must be reduced by reason of such damage. The parties are now in agreement that the proper rate for depreciation of this building is two percent per annum. Prior to petitioners' 1947 departure from Hungary they managed this property. Thereafter, until 1952 it was managed for them by an agent. In *233 1952 it was confiscated by the Hungarian Government pursuant to Decree No. 4, supra. Petitioners were entitled to take a deduction for the loss in that year. The record contains the dollar equivalent of the pengo at various pertinent dates, and, upon the basis of our findings above, the parties can compute the adjusted basis of the properties at the time of confiscation. The losses thus determined are deductible in 1952. [1] The carryovers as allowed by law may similarly be determined in the Decision to be entered under Rule 50. Footnotes
1. As to the Kazinczy property, however, petitioner testified that one of the 45 apartments was occupied rent free by his wife's aunt, and he stated that he therefore does not claim a deduction for 1/45th of the loss with respect to this property.↩