C. RAY CULVER INCORPORATED, RAY OF ALASKA & ASSOCIATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; C. RAY CULVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
C. Ray Culver v. Comm'r
Docket Nos. 7129-81, 9076-81.
United States Tax Court
T.C. Memo 1983-614; 1983 Tax Ct. Memo LEXIS 172; 46 T.C.M. (CCH) 1592; T.C.M. (RIA) 83614; September 28, 1983. C. Ray Culver (an officer), for the petitioner in Docket No. 7129-81. C. Ray Culver, pro se in Docket No. 9076-81. Henry Thomas Schafer, for the respondent. PARKER
*172 MEMORANDUM OPINION PARKER, Judge: Respondent has determined the following deficiencies in and additions to petitioners' Federal income taxes: Docket No.
Year
Deficiency
Sec. 6653(a) [1]
9076-81
1977
$3,294.00
$165.00
1978
40,301.00
2,015.00
1979
49,943.00
2,497.00
7129-81
1977
231.00
1978
3,265.00
1979
4,498.00
*173 After concessions, the following issues remain for our determination: (1) Whether petitioner C. Ray Culver ("Culver") or petitioner C. Ray Culver Incorporated, Ray of Alaska & Associates ("Associates") is taxable on wage income paid by the Air Force for services performed by Culver as a Civil Service employee; *174 (2) Whether Associates is entitled to deductions for (a) depreciation, (b) utility and vehicle operation, (c) amortization, (d) "cost of goods sold," and (e) "net operating loss," in excess of the amounts allowed by respondent; (3) Whether Associates is entitled *175 to an investment tax credit in 1979 with respect to its purchase of an automobile; and (4) Whether Culver is liable for an addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Our resolution of these disputed issues will have certain computational effects that we will discuss below. Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and exhibits attached thereto are incorporated herein by this reference.To facilitate disposition of these cases, we have combined our findings of fact and opinion with respect to each issue. Petitioner C. Ray Culver ("Culver") resided in Nenana, Alaska, at the time he filed his petition in this case. Culver timely filed individual Federal income tax returns for the years 1977, 1978, and 1979 with the Internal Revenue Service Center at Ogden, Utah. Petitioner C. Ray Culver Incorporated, Ray of Alaska & Associates ("Associates"), an Alaska corporation, had its principal place of business at Nenana, Alaska, at the time it filed its petition in these case. Associates filed its 1977, 1978, and 1979 U.S. Corporation Income Tax *176 Returns (Forms 1120) with the Internal Revenue Service Center at Ogden, Utah. Associates also filed an amended return (Form 1120X) for 1977, reporting additional income and deductions. Associates was incorporated under the laws of Alaska and was recognized by Alaska as a corporation as early as November 18, 1977. [2]Culver was the president and principal shareholder of Associates. Issue 1: Assignment of Income and Related Income Adjustments
During the years in issue, Culver was a Civil Service employee and performed services for the United States Air Force at Clear Air Force Station near Fairbanks, Alaska, as a power plant operator. His work schedule involved four days at the power plant and three days off each week. The Air Force issued checks to Culver in payment of these services in the following amounts: Year
Amount
1977
$43,484.66
1978
61,846.16
1979
68,867.18
*177 The Air Force issued Forms W-2 to Culver for these amounts. Sometime around November 18, 1977, Culver purported to assign to Associates his wage income from the Air Force. The preamble to Associates' by-laws provides: Income: All Income received by C. Ray Culver, SS# 267-40-XXXX [Culver's social security number], from any source will be Corporation Income, EXCEPT salary (Dividends) paid by [Associates]. Culver continued to receive paychecks from the Air Force made out to him personally, but, after November 18, 1977, those checks were deposited into Associates' bank accounts. On his returns for the years in issue, Culver reported the full amounts of his Air Force wages on line 8 of his Forms 1040, "Wages, Salaries, Tips, etc.," but claimed deductions on line 13 or 18 (Schedule C or Schedule E) of Forms 1040 for "Losses from Small Business Corporations" in the following amounts: Year
Amount
1977
$5,408.24
1978
61,846.16
1979
68,867.18
These amounts represented Culver's W-2 wages from the Air Force that he purported to assign to Associates. On his returns, Culver also reported receiving the following amounts of wages and other corporate distributions *178 from Associates: Year
Wages
Corporate Distributions
1977
$999.86
$159.94
1978
10,524.23
5,275.82
1979
10,708.10
6,847.31
Culver treated the non-wage corporate distributions from Associates as dividends. His returns reported these wages and the distributions (subject to the $100 exclusion of section 116) as taxable income. On its corporate income tax returns (Forms 1120) for the calendar years 1977, 1978, and 1979, Associates reported in income the W-2 wage income from the Air Force that Culver had purported to assign to Associates. Associates also claimed deductions for the wages it paid to Culver in the amounts shown above. [3]
*179 In his statutory notice to Culver, respondent determined that Culver was taxable on his wage earnings from the Air Force and that Culver's claimed deductions for losses from Small Business Corporation (the same wage payments) were not allowable. In his statutory notice to Associates, respondent allowed the claimed deduction for the wages it paid to Culver (the $999.86, $10,524.23, and $10,708.10 for the years 1977, 1978, and 1979, respectively). See footnote 3. Also, presumably to protect the revenue, respondent based his redetermination with respect to Associates upon its returns as filed, and the amended return for 1977, thus accepting Associates' reporting of Culver's wage income as its corporate income. Respondent initially regarded Associates as a sham and thus not a viable taxable entity for Federal tax purposes. Accordingly, respondent determined that Culver, not Associates, was taxable on certain passive investment income. Respondent now accepts Associates as a separate taxable entity and concedes that Associates, not Culver, is taxable on the passive investment income. Thus, on this first issue, we are faced only with the question of who is taxable on the Air Force *180 payments with respect to Culver's services--Culver or Associates. Culver argues that he contracted his labor to Associates and therefore Associates should be taxed on his wages. We disagree. A fundamental principle of our tax system is that income must be taxed to the one who earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Even assuming their validity under state law, contractual arrangements designed to circumvent this rule, by attempting to deflect income away from the one who earns it, will not be recognized for Federal income tax purposes. Lucas v. Earl,281 U.S. 111, 114-115 (1930); United States v. Basye,410 U.S. 441, 449-450 (1973). Determining who earns the income depends upon which person or entity in fact controls the earning of the income, not who ultimately receives the income. Benningfield v. Commissioner,81 T.C. No. 27 (September 19, 1983); Johnson v. Commissioner,78 T.C. 882, 891 (1982); American Savings Bank v. Commissioner,56 T.C. 828, 839-842 (1971). *181 See generally, Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). To find that Associates controlled the earning of the income requires two elements. First, Associates must have had the right to direct or control Culver's activities in some meaningful manner. See Johnson v. United States,698 F. 2d 372, 374 (9th Cir. 1982); Schulz v. Commissioner,686 F. 2d 490, 494 (7th Cir. 1982), affg. a Memorandum Opinion of this Court; Vnuk v. Commissioner,621 F. 2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Benningfield v. Commissioner,supra;Johnson v. Commissioner,supra,78 T.C. at 891; Vercio v. Commissioner,supra,73 T.C. at 1254. Second, there must have been a contract or similar indicium of agreement between Associates and the Air Force recognizing Associates' controlling position. Johnson v. United States,supra;Benningfield v. Commissioner,supra; *182 Stephenson v. Commissioner,79 T.C. 995, 1001 (1982); Johnson v. Commissioner,supra,78 T.C. at 891, 893. Neither element is present here. The record wholly fails to establish either of the requisite elements. There is no evidence whatsoever that Associates had even the nominal right to direct Culver's activities as a Civil Service employee working as a power plant operator, much less that Associates actually exercised meaningful control. Likewise, nothing in the record indicates that the Air Force knew of Culver's "arrangement" with Associates, much less that the Air Force in anyway actually recognized Associates' position of control. Accordingly, Culver's attempt to shift his wage earnings and the taxes thereon to Associates is ineffective, and he remains liable for the taxes on his earnings. We have sustained respondent's primary determination, namely, that the Air Force wage income remains taxable to Culver. Therefore, respondent's implicit alternative determination, that the wages are taxable to Associates, must fail. Culver and Associates cannot both be taxable upon the Air Force wage income. Thus the corporation's income *183 must be reduced by the amounts of the Air Force wages. If Culver's endorsement of his Air Force paychecks to Associates is given any effect for Federal tax purposes, it should be treated as contributions to Associates' capital, which are not taxable to Associates nor of course deductible by Culver. Section 118(a). This elimination of Culver's wages from Associates' income leaves the corporation with only the passive investment income of $1,076, $10,155, and $18,570, for the years 1977, 1978, and 1979, respectively. This may effectively eliminate Associates' tax liability, since it may leave net operating losses for all three years, regardless of our disposition of the remaining corporate deductions. Also as a consequence, Associates' earnings and profits may be largely, if not completely, eliminated. See section 312 and the regulations thereunder. Accordingly, the non-wage (dividend) distributions by Associates to Culver, to the extent that they exceed any earnings and profits, will constitute nontaxable returns of capital to Culver, not dividends as he reported. See sections 316(a), 301(c). See footnote 3. Finally, an automatic adjustment to Associates' deduction for charitable *184 contributions is required. See section 170(b)(2), as in effect during the years in issue. The parties can attend to these matters in their computations under Rule 155. Issue 2: Deductions by Associates
On its returns for the years in issue, Associates claimed various deductions that respondent in his statutory notice disallowed: Amount
Item
1977
1978
1979
Depreciation [4]
$64.31
$734.62
$867.27
Utilities and Vehicle
Operation [5]
171.43
Amortization
2,038.40
921.20
Cost of Goods Sold [6]
9,899.96
12,068.38
Net Operating Loss
469.93
*185 We shall discuss each claimed item separately. (a) Depreciation
The disputed depreciation deductions involve two items--building and transportation equipment. The building involved was Culver's personal residence, which he contributed to Associates (70 percent) and to C&W Air Rental Sporting Arms (C&W), a partnership (30 percent). Both petitioners have treated and respondent has accepted Associates rather than Culver as the partner in C&W. Culver continued to use this residence as a home during the years in issue. The transportation equipment involved were a Chevrolet pickup truck, and, in late 1979, a Datsun automobile. Culver used these vehicles to commute to and from his job at Clear Air Force Station. Where a corporation's property is used by the corporation in its trade or business, and also used by a shareholder for his personal purposes, an allocation between business and personal use is necessary, and only the portion of the depreciation allocable to business use is deductible. Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973); International Artists, Ltd. v. Commissioner,55 T.C. 94, 104-105 (1970). *186 Here, with respect to the residence, respondent has allocated 50 percent to business use (30 percent derivatively through C&W and the other 20 percent directly to Associates) and 50 percent to personal use, and he allowed a depreciation deduction on that basis. With respect to the motor vehicles, respondent allowed no depreciation, determining that they were used entirely for personal purposes. As to the residence, Culver testified that he stayed there for "security reasons" and that he used only the "furnace room" for personal purposes. His testimony is not believable. Culver was away from the residence four days out of every week when he was working at Clear Air Force Station. Associates had a full-time secretary who worked at the residence, but she did not stay at the residence at night for "security reasons" while Culver was away. He was at the residence three days a week, although he may not have taken his meals there. His assertion that he used only the "furnace room" of the residence for personal purposes is simply not credible. As to the vehicles, Culver specifically testified that he used them to commute to the Air Force station. Beyond his broad general assertion *187 that the pickup and car were "used by the corporation," he presented no evidence whatsoever. The record is also devoid of any real evidence of what, if any, business activities Associates carried on, besides receiving passive investment income. Associates has failed to show that it is entitled to deductions in any amounts greater than respondent has allowed. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). (b) Utilities and Vehicle Operation
Associates' claimed deduction for utilities and vehicle operation in 1977 involves two items: (1) gas, oil, and repairs on the Chevrolet pickup and (2) utilities at the residence. Respondent has allowed 50 percent of the utilities, based on his allocation of 50 percent of the use of the residence for corporate purposes (again 20 percent directly to Associates and 30 percent derivatively through its status as a partner in C&W). As in the case of the depreciation claim, respondent allowed none of the vehicle operation costs on the pickup that Culver used to commute to the Air Force station, because the record establishes no business usage of that vehicle. Where a corporate expense involves both a corporate *188 purpose and a personal purpose of the shareholder, an allocation is necessary. Henry Schwartz Corp. v. Commissioner,supra;International Artists, Ltd. v. Commissioner,supra. As with the depreciation discussed above, Associates has failed to prove any greater percentage of corporate use than respondent has determined and allowed on the utilities expense. Welch v. Helvering,supra;Rule 142(a). And the record establishes no corporate use for the vehicle so no deduction is allowed for vehicle operation expenses. (c) Amortization
In 1978 and 1979, Associates claimed deductions for amortization in the amounts of $2,038.40 and $921.20, respectively. Although the record is not wholly clear, this deduction appears to represent 98 percent of equal payments by Associates and its employees (including Culver) to a self-insured reserve fund for employee health, accident, and automobile "insurance" benefits. Respondent disallowed these "amortization" deductions. Amortization or depreciation under section 167 allows a taxpayer *189 to recover the value of a wasting capital asset over the course of its useful life in the taxpayer's trade or business. Associates has failed to prove any of the requisite elements--the nature of the capital asset, the nature of its use in Associates' business, its useful life or its salvage value. Associates is not entitled to a deduction for amortization. Welch v. Helvering,supra;Rule 142(a). In an appropriate case, a taxpayer may deduct under section 162(a) the cost of employee health and accident benefits funded either through insurance premiums or self-insured payments. See section 1.162-10(a), Income Tax Regs. However, Associates has completely failed to prove the nature of any payments, much less that they were ordinary and necessary expenses of Associates' business.Moreover, any payments that constituted employee contributions would not be deductible by Associates. Respondent's determinations are sustained. Welch v. Helvering,supra;Rule 142(a). (d) "Cost of Goods Sold"
In 1978 and 1979, Associates *190 claimed deductions for "cost of goods sold," in the amounts of $12,043.56 and $13,343.73, respectively. See footnote 6. These amounts were composed of "loans," "miscellaneous," "insurance claims," and "utilities/vehicle operations." The deductions for "loans" in the amounts of $2,844.42 for 1978 and $6,460.34 for 1979 represent amounts of money that Associates loaned to various individuals, including its employees, who were having financial difficulties.A loan is not a deductible business expense nor part of the cost of selling goods or providing services. Section 166 allows a deduction for bona fide debts that become worthless during the taxable year, but Associates has shown neither element. Respondent's disallowance of the full amount of the claimed deductions for "loans" is sustained. The item "miscellaneous" is composed of many elements. Respondent has now allowed deductions for postage, stationery, bank charges, and advertising. See footnote 6. Culver testified that the remaining miscellaneous expenses in the amounts of $555.25 for 1978 and $325 for 1979 were for rent of a *191 room for Culver at Clear Air Force Station and for a "puppy pen." The rent for the room was a purely personal expense of the shareholder, Culver, and therefore not deductible by the corporation, Associates. International Artists, Ltd. v. Commissioner,supra,55 T.C. at 104-105, and cases cited therein.Associates has failed to show how, if at all, the puppy pen was used in its trade or business. Culver admitted that the pen was purchased in connection with another business he allegedly started called "Pampered Pets." The item "insurance claims" represents payment by Associates of certain employee medical expenses, of the funeral expenses of one employee, and of insurance on the corporate vehicles. As with the deductions claimed for amortization, discussed above, Associates has failed to prove that any of the medical and funeral expenses are ordinary and necessary expenses of its business. And since Associates has failed to prove that the vehicles were used for corporate purposes, the automobile insurance on these vehicles is not deductible. [7]
*192 Finally, the item "utilities/vehicle operations" claimed as part of "cost of goods sold" for 1978 and 1979, is identical to the expenses Associates claimed separately in 1977, discussed above. See footnotes 5 and 6. As with those utilities/vehicle operation expenses discussed earlier, respondent here also allowed 50 percent of the utilities, representing his allocation of 50 percent of the use of the residence to Associates (20 percent directly and 30 percent derivatively through C&W). Likewise, respondent allowed none of the vehicle operation costs, since no corporate usage has been shown. As above, Associates has failed to prove it is entitled to any amount greater than that already allowed by respondent. (e) "Net Operating Loss"
At trial, Culver admitted that the deduction Associates claimed in 1979 for a "net operating loss" in the amount of $469.93 actually represented a carry forward from 1978 of Associates' excess charitable contributions. Respondent disallowed it because Associates' 1979 charitable contributions exceeded the five percent limitation applicable in 1979. See section 170(b)(2). This is purely a computational matter, a straight forward application *193 of the express provisions of the Code. Respondent is sustained, and some further adjustment may have to be made in the Rule 155 computations. Accordingly, respondent's disallowance in his statutory notice of these claimed deductions, as modified by his subsequent concessions, are sustained. Welch v. Helvering,supra;Rule 142(a). Issue 3: Investment Credit
Associates claimed an investment tax credit of $643.50 in 1979, representing 10 percent of the cost of a Datsun automobile. Culver used this car to commute to and from Clear Air Force Station, and the record does not establish any business usage of this vehicle. The investment credit is allowable only for purchases of certain depreciable property. Sections 38(a), 48(a). Since Associates has failed to prove that the car is depreciable property, having proved no corporate business use, no credit is allowable. Section 1.48-1(b)(1), Income Tax Regs.
Issue 4: Section 6653(a) Additions
Respondent determined that Culver was liable for an addition to tax under section 6653(a). *194 Culver has the burden of proving that he did not negligently or, with intentional disregard of tax rules and regulations, underpay his taxes. Rule 142(a); Benningfield v. Commissioner,supra;Luman v. Commissioner,79 T.C. 846, 860-861 (1982); Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Culver has not carried his burden. Culver prepared his own tax returns and those of Associates for the years in issue. [8]Culver is not a lawyer and sought no tax advice before attempting to assign his wage income to Associates and trying to deduct many of his personal expenses as corporate business expenses. His purported perusal of the Internal Revenue Code does not constitute reasonable reliance on competent, informed tax advice. Indeed, his flagrant attempt to assign wage income is almost per se negligence. "No reasonable person would have trusted this scheme to work." Hanson v. Commissioner,696 F. 2d 1232, 1234 (9th Cir. 1983), affg. a Memorandum Opinion of this Court. *195 Accordingly, to reflect the foregoing and respondent's concessions, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
2. Associates was not formally incorporated under Alaska law until June 26, 1978, but the State of Alaska had recognized it as a separate entity from the earlier date. In this proceeding respondent has also accepted Associates as a separate taxable corporate entity as of November 18, 1977.↩
3. For the year 1977 Culver received from Associates and reported in income gross wages of $999.86. That figure included net take-home pay of $875.35, withheld Federal taxes of $102.90, and withheld State taxes of $21.61. Associates deducted as compensation paid to officers only the $875.35 take-home pay in 1977, but should have deducted the total gross wages ($999.86). In 1978 Associates deducted as compensation both the $8,974.90 W-2 wages (gross wages including withheld Federal taxes) paid to Culver and also the $1,549.33 taxes, in addition to the taxes withheld, paid for Culver. A corporation may deduct the gross wages it pays its employees, including, of course, withheld taxes paid over to the Government. But here, Associates also paid the additional amount of taxes Culver owed over and above the amount withheld. That would be a constructive dividend to the extent of earnings and profits and therefore taxable to the employee-shareholder but nondeductible by the corporation. Respondent has raised no issue as to the fact that Associates deducted too little as compensation in 1977 and too much in 1978. However, it may be beneficial to Culver and Associates to treat the $1,549.33 from 1978 as the nonwage distribution it was. Thus, although Associates will thereby decrease its net operating loss for the year, it will probably still have no earnings and profits, and Culver can treat this amount as a nontaxable return of capital. See the discussion in the text below in regard to Associates' tax situation. The parties may be able to handle this matter in their Rule 155 computations.↩
4. These are the depreciation deductions remaining in dispute after respondent's concessions of $8.78, $105.38, and $253.57, for the years 1977, 1978, and 1979, respectively. ↩
5. This is the amount remaining in dispute after respondent's concession of $68.57 for 1977. For 1978 and 1979, Associates reported this item as part of "Cost of Goods Sold" and the concessions will be discussed under that item. ↩
6. These are the amounts remaining in dispute after respondent's concessions on miscellaneous items and on utilities/vehicle operation expenses that were reported under this label on Associates' returns. Respondent has conceded miscellaneous expenses of $1,157 for 1978 and $28.74 for 1979. Respondent has also conceded utilities/vehicle operation expenses of $986.60 for 1978 and $1,246.61 for 1979.↩
7. Since the vehicles were used by Culver only for personal purposes, these expenditures by the corporation may constitute additional payments of dividends to him. However, respondent has not sought an increased deficiency against Culver in that regard, and it may well be that the amounts would constitute nontaxable returns of capital.↩
8. Many improper deductions were claimed on the corporate returns, including the many personal expenses of Culver that were improperly deducted as corporate expenses.↩